[L. A. No. 1296.    Department Two.—February 16, 1905.]

## SOUTHERN PACIFIC RAILROAD COMPANY, Appellant, v. SAN FRANCISCO SAVINGS UNION, and GEORGE E. BECKER, Respondents.

EMINENT DOMAIN—CONDEMNATION OF RIGHT OF WAY FOR RAILROAD—FEE RESERVED TO OWNER.—Upon the condemnation of land for a right of way for a railroad, under the law of this state, the railroad company is only entitled to condemn an easement over the land, consisting of the exclusive right to the use of the surface for railroad purposes, leaving the fee in the owner of the land.

ID.—MEASURE OF VALUE OF EASEMENT.—In ordinary cases of agricultural lands, building lots, and lands with minerals *in situ,* where the fee is of no practical value to the owner, the measure of the value of the easement is the value of the fee; yet, in all cases, the theory of the ownership of the fee remains, and whenever it can be shown as a fact that the fee burdened with the easement has some substantial value to its owner, such value is reserved to him, and must be considered in determining the value of the easement condemned.

ID.—OIL-BEARING LAND—ERRONEOUS EXCLUSION OF EVIDENCE.—Where the land taken for the right of way consists of a strip along the boundary of a tract of oil-bearing land owned by the defendant, and leased for oil purposes, it was error to exclude evidence to show that the oil beneath the surface of the strip reserved to the owner had a substantial and distinctive value which might be availed of by wells sunk by the owner on the adjoining tract.

ID.—LIMITED RIGHTS OF RAILROAD COMPANY.—In no case has the railroad company the right to use the fee by digging beneath the surface and taking minerals or oils therefrom, which are reserved to the owner of the fee, who is the owner of adjoining land.

ID.—EVIDENCE—MARKET VALUE OF LAND—OPINION OF WITNESS—MOTION TO STRIKE OUT.—A witness who has fully qualified himself on direct examination to give his opinion as to the market value of oil-bearing lands is not shown on cross-examination to have given a merely speculative opinion because he presented matters influencing his opinion without entering into details or estimates. Where only part of his testimony on cross-examination was improper, it was not error to refuse to strike out the whole of his testimony.

ID.—PROGRESSIVE DECREASE IN PRODUCTIVENESS OF OIL-FIELD—ADMISSIBLE EVIDENCE.—Evidence is admissible to show a progressive decrease in the productiveness of the oil-field within which the land in question is situated, as bearing upon the market value of the land in question as oil-bearing land.

APPEAL from an order of the Superior Court of Santa Barbara County denying a new trial. W. S. Day, Judge.

The facts are stated in the opinion of the court.

Canfield & Starbuck, for Appellant.

Whenever the interest remaining in the owner of the fee has a determinative value, it may be shown to prevent the value of the fee from being the measure of the value of the easement. (*Preston* v. *Dubuque etc. R. R. Co.,* 11 Iowa, 15; *Robbins* v. *St. Paul etc. R. R. Co.,* 22 Minn. 286, 287; *Cummins* v. *Des Moines etc. R. R. Co.,* 63 Iowa, 397, 405; *Hollingsworth* v. *Des Moines etc. R. R. Co.,* 63 Iowa, 444; *Clayton* v. *Chicago etc. R. R. Co.,* 67 Iowa, 238, 242; *Reading etc. R. R. Co.* v. *Balthaser,* 119 Pa. St. 472; *Tyler* v. *Town of Hudson,* 147 Mass. 609; *Woodruff* v. *Neal,* 28 Conn. 165-167; *Tucker* v. *Eldred,* 6 R. I. 404, 405; *Northern Pacific etc. Ry. Co.* v. *Forbis,* 15 Mont. 452, 459.[1])

Richards & Carrier, for Respondents.

The reservation of oil is simply a possible benefit to the land not sold, and not a reservation of dominion over any part of the land condemned. (*Ohio Oil Co.* v. *Indiana,* 177 U. S. 190; *Townsend* v. *State,* 147 Ind. 624;[2] *People's Gas Co.* v. *Tyner,* 131 Ind. 277;[3] *Westmoreland etc. Co.* v. *De Witt,* 130 Pa. St. 235.) The question to be determined is the market value of the land taken for available uses. (*Boom Co.* v. *Patterson,* 98 U. S. 403; *Stockton etc. R. R. Co.* v. *Galgiani,* 49 Cal. 139; *San Diego Land etc. Co.* v. *Neale,* 88 Cal. 50; *Spring Valley Water Works* v. *Drinkhouse,* 92 Cal. 528; *Santa Ana* v. *Harlin,* 99 Cal. 538; *Russell* v. *St. Paul etc. R. R. Co.,* 33 Minn. 213;[4] *Little Rock J. R. R. Co.* v. *Woodruff,* 49 Ark. 381.[5])

LORIGAN, J.—This action was brought to condemn a right of way for a relocated railroad of plaintiff in the county of Santa Barbara. The strip sought to be condemned consisted of about two thirds of an acre of land belonging to the de-

---

[1] 48 Am. St. Rep. 692.    [4] 53 Am. Rep. 35, and note.
[2] 62 Am. St. Rep. 477.    [5] 4 Am. St. Rep. 51.
[3] 31 Am. St. Rep. 433.

fendant corporation.   This strip lay along the southern boundary of a larger tract, several acres in extent, belonging to the same owner, and located within the exterior limits of the Summerland oil-field, or district, in which the oil flows naturally from higher or shallower to lower or deeper wells. The defendant Becker has an interest in both pieces of property under a contract with the defendant corporation.

The case was tried before a jury, and all issues having been waived except as to the value of the property taken, the evidence in the case was limited solely to that question, and, being submitted to the jury, a verdict was rendered in favor of defendant.   The plaintiff moved for a new trial, and from the order denying it appeals.

The main point on this appeal relates to the proper measure of value which should be applied in a suit to condemn land of the character involved here,—namely, oil land; whether an easement acquired over a strip of oil-bearing land, part of a larger tract of the same character owned by the same person, is equivalent to taking the fee, and must be paid for as of the value of the fee, or may it, when applied to such land, be an interest different in law from the fee, having a substantially different value, and to prove which the plaintiff should be permitted to introduce evidence.

The lower court held, as a matter of law, that in condemning a right of way over this strip of land, part of a larger tract of oil-bearing land, that there could be no difference in value between the easement and the fee, and, not only, over plaintiff's objections, permitted defendants to address their evidence solely to the value of the fee, but instructed the jury that defendants were entitled to have an award to that extent.

It was insisted by the plaintiff upon the trial that it sought, and under the law was entitled to condemn, only an easement in property, and endeavored by cross-examination of defendants' witnesses, and by witnesses produced upon its own part, to show that there was in fact a substantial difference in value between the fee in this land and the easement it sought to condemn for a right of way across it.   The court refused to permit them to make this showing, and under all these rulings the question whether the court was correct as to the measure of value it applied, is presented.

While it is no doubt true that under the law of this state a

railroad company is only entitled to acquire by condemnation proceedings an easement over the land, and that the fee thereof remains in the owner, yet, in most condemnation cases by railroad companies, this distinction, as far as it enters into a determination of the damages to be assessed for the right of way acquired thereby, has no practical application. Usually in such cases there is no substantial difference in value between the easement and the fee of which the law will take notice.  Hence, in ordinary cases, where condemnation for a right of way for railroad purposes is sought, evidence is permitted to show, as the damages sustained, the full value of the land taken, upon the theory that the easement will be perpetual; that the right of way acquired, though technically an easement, will be permanent in its nature, and the possibility of abandonment by non-user so remote and improbable as not to be taken into consideration; that the exercise of the right will require practically the exclusive use of the surface, and that any interest which might be reserved to the owner in the fee would only be a nominal one and of no value.  Under such circumstances, as there can be no substantial determinative value in the fee apart from the easement, the law will not consider them separately, but will require the condemning corporation to pay the value of the fee as the measure of damages sustained.  To illustrate: Where a right of way is condemned over agricultural land or over building lots, this is in effect to take the entire value of the land.  In either case the underlying ground upon which the easement is imposed can be of no value to the owner.  The sole value of such lands consists of the use to which the owner could devote the surface—to cultivation or building—and when he is deprived of that use, the entire value of the land is taken from him, and, hence, for all beneficial purposes to the owner, there can be no difference in value between the easement and the fee; they are substantially identical in value.

And to illustrate further: If the whole of a tract of mineral land is to be condemned, whether such mineral has a fixed *situs,* such as gold, iron, or coal, or the land overlies minerals of a fugitive and wandering nature, such as petroleum oil or natural gas, which may be drawn from it, the same rule for determining the easement taken would apply.  As these minerals can only be reached from the surface, when all the

surface is taken from him, the owner is deprived of the entire value of his land. A reserved ownership in the minerals would be merely nominal and of no advantage or benefit to him.

So that, in all these cases which we have instanced, it would be idle to endeavor to distinguish, in assessing damages, between the value of the easement and the value of the fee, because, in the nature of things, there is no real difference between them; when the easement is taken the fee is substantially taken, and for all practical purposes in measuring damages the value of the fee is the only available and proper standard.

But while it is the rule that where there is practically no substantial difference between the value of the fee and the value of the easement, the court may properly permit the value of the fee to be proven and assessed by the jury as the damages, yet, in theory, the distinction between the two remains, and in all cases where it can be shown as a fact that the fee, burdened with the easement, is of some substantial value to the owner, this value is reserved to him, and must be taken into consideration in determining the damages to be awarded for the imposition of an easement upon the land.

In condemning for a right of way, no more land and no greater interest in it can be taken by the railroad company than the public use requires, which is ordinarily the surface of the land. While it is true, as we have pointed out, that under some circumstances, in assessing damages, the value of the fee of the land taken is awarded, yet this is because in the nature of things there can be no difference in value between them. When, however, such a difference does exist, the rule is different, and the value of the easement taken as distinguished from the value of the fee, is alone to be ascertained by the jury, and the owner compensated therefor. And this difference in value may, and usually does, exist to a greater or less degree in all cases where the underlying estate is valuable for the minerals it contains, and when but a portion of the owner's land which contains them is burdened with the easement. Whatever minerals lie beneath the right of way are reserved to the owner, and wherever such minerals are *in situ,* underlying this right of way, while he may not enter upon it to take them (because the nature of the easement

requires exclusive possession of the surface by the company) he can drift from tunnels sunk upon his adjoining land and do so, leaving, however, sufficient support for the easement imposed. Subject to this support, the right of the owner of the land to take out all the minerals beneath the right of way is absolute. Under the condemnation the railroad company acquires the permanent and exclusive control of the surface of the land, but it acquires nothing more. It acquires no title to the minerals beneath the surface, and of course no right to dig beneath the surface for the purpose of appropriating them, and if it should undertake to do so, could be restrained at the instance of the owner of the underlying fee. While the title to the minerals underneath the right of way is reserved exclusively to the owner of the land across which it is condemned, there is no doubt that by being restricted from entering upon it, it may be much more difficult and expensive for him to take them out; far more so than if he could operate directly over the land which has been appropriated under the easement; and it may be that much valuable mineral would have to be left to afford surface-support, or if this were taken out, a substituted surface-support would have to be provided by the owner. But evidence of all these matters would be submitted to the court and jury, and would enter as substantial factors in determining the value of the easement. They would not affect the reserved right of ownership in the fee.

While our attention has not been directed to any decision of this court adopting this as the rule in this state to be applied in assessing damages for the condemnation of a right of way over mineral lands, the authorities seem to be quite uniform upon the point in other jurisdictions, as far at least as lands containing minerals *in situ* are concerned, and the rule seems to be a reasonable and just one. Some of these authorities we cite. (*Robbins* v. *St. Paul etc. R. R. Co.,* 22 Minn. 287; *Hollingsworth* v. *Des Moines etc. R. R. Co.,* 63 Iowa, 444; *Tyler* v. *Town of Hudson,* 147 Mass. 609; *Blake* v. *Rich,* 34 N. H. 289; *Phifer* v. *Cox,* 21 Ohio St. 255;[1] *Penn Gas Co.* v. *Versailles Fuel Gas Co.,* 131 Pa. St. 532; *Northern Pacific etc. Ry. Co.* v. *Forbis,* 15 Mont. 459.[2])

But the particular question presented in this case as to the

[1] 8 Am. Rep. 58.          [2] 48 Am. St. Rep. 692.

proper measure of value which should be applied where an easement is sought over oil-bearing land seems never to have been presented for determination to any court; at least our attention is called to no decision on the subject, and counsel upon both sides have been extremely thorough in the presentation and discussion of the subject.

Counsel for appellant, reasoning from analogy, insist that the same rule should apply to oil lands as to other mineral lands, while counsel for respondents claim that there is no room for such application; that there is such a radical and essential difference, both as to the character of the minerals and the nature of their ownership, as to make the rule inapplicable.

But we do not think this difference in ownership, or the character of the minerals, of such a nature as to make it impossible that an owner of adjoining land can derive any benefit from a reservation in his favor of the petroleum oils in place, or which are liable to accumulate by reason of the physical laws governing such fluids, under the land upon which the easement is imposed. Nor can it be said that it is impossible to show, in ascertaining the value of the easement acquired, that this reserved right has no determinative value separate from the easement.

These oils lie in reservoirs, and, collectively, the owners of the superincumbent lands have an exclusive ownership in them. The ownership of each, it is true, is only a qualified or partial ownership—a right to reduce the oil in the common reservoir to possession by sinking wells upon the particular tract of land owned by him overlying it. But when so being exercised, the owner of the well is not limited to any particular territorial area beneath the surface from which he may draw the oil. He may not only draw from his own land, but he is entitled to draw from the reservoir generally, and he naturally does draw, and is of right entitled to draw, to his own well the oil underlying the lands of other surface owners. This, of course, is a right common to all surface owners, and as the reservoir is not inexhaustible, there is a liability that, in the process of pumping, the oil beneath the lands of proprietors higher up on the strata will be naturally diminished, if not depleted, by being either drawn out, or by gravitation carried to lower and deeper wells. But aside from this liability to

loss from beneath particular lands, the ownership in the oil underneath that land may be said to be absolute in the owner of the surface. And if his right to take it out is not lost by virtue of being deprived of a part of his surface land, or his beneficial interest is only to some extent diminished, there is no reason why a corporation condemning a right of way across it, which takes only an easement, should pay for this reserved and available interest in the fee. That this reserved interest in the oil under the right of way was of a determinative value to the defendants, as owners of the adjoining land, was what the plaintiff sought to prove. Its contention was that, as such owners, it was possible for defendants to take out, by wells sunk along the border of the adjoining land, the oil in place beneath the strip composing its right of way, and by means of such wells to intercept the flow of oil from such adjoining land beneath the easement surface. And to the extent that this might be accomplished, it offered to show that this right was of value as something distinct and apart from the value of the easement, and we perceive no reason why it should not have been permitted to do so.

It is contended, however, by the respondents that whatever ownership the defendants may have in the oil beneath the right of way could only be made available from the surface; that ownership of the surface carries with it the only right in the oil which is of any value, and that is the right to reduce to possession the oil beneath that surface; and that if, by putting down wells on the land adjoining, they can draw out the oil from beneath the right of way, they do not acquire such oil by virtue of any ownership they have in it as taken from the land subject to the easement, but they get it by virtue of their rights in the surface of the adjoining tract through which it is drawn.

We cannot accord with this line of argument. We do not think it keeps in view a proper distinction between the qualified ownership of a surface owner of land in the general oil deposits contained in the reservoir, and the like ownership which attaches to the specific quantity which from time to time may be under the surface of a particular tract of land. While, collectively, all the owners of the superincumbent land have a common interest in the oil deposit, yet the right of an owner of the surface of a particular tract of such land, to

reduce the oil under it to possession, can only be enforced when it comes under his land. If he can then reduce it to possession by drawing it from under all his land, notwithstanding his right to operate from a portion of the surface of such land for that purpose may be prevented by the imposition of an easement upon it, he retains the same right and to the same extent as he possessed it before the easement was imposed, and there necessarily would be a difference between the value of the reserved right and the value of the easement. It is true that usually the surface taken for a right of way would be the most advantageous point from which to draw the oil from beneath it, but, in the case instanced, it would not be essentially requisite. It might entail greater difficulty, and be attendant with less practical benefit and advantage for the owner of the adjoining land who retains this beneficial ownership in the oil underlying the right of way, to operate, in acquiring its possession, from the adjoining land than from the overlying surface, but these are matters which would have to be taken into consideration in estimating the value of the easement.

Nor is it true, as contended, that the appropriation of the surface of the oil-bearing land of itself necessarily destroys all right of defendants in the oil underneath it, by reason of such appropriation. As we have indicated above, this does not follow, if, as a fact, by virtue of owning adjoining lands, a reserved ownership in the oils beneath the surface easement is of value. Not only this, but there are certain legal rights which, while enforceable by any owner of the surface of oil-bearing lands, are equally secured to the defendants in protection of their reserved rights to the oils underlying the easement, notwithstanding the surface control has been taken from them. By the condemnation proceedings, the plaintiff could not get any interest in the land itself, but only a right of way across it. It acquired no right to the underlying oils. If it should abstract them from under this right of way, the defendants could recover their value in an action for damages for their conversion, or could maintain an action in claim and delivery for their possession, to the same extent as against any other trespasser (*Hail* v. *Reed*, 15 B. Mon. 479; *Hughes* v. *Union Pipe Lines*, 119 N. Y. 426), or if the plaintiff should attempt to sink wells on the right of way, it

could be restrained in equity at the instance of defendants, on the ground of a threatened irreparable injury. As is said in *Bettman* v. *Harness*, 42 W. Va. 437: "Such damages subtract from the very substance of the estate and tend to its ultimate destruction. . . . Petroleum oil in place is a part of the realty, and its unlawful removal a disherison equity will enjoin."

The interest reserved to the owner in the fee, owning adjoining land, upon condemnation of a right of way, is in all respects the same as if he had made a grant or a lease of a portion of the surface of his oil-bearing land, reserving to himself, as the owner of adjoining land, the right to all minerals beneath the granted or leased tract, but without right to enter upon its surface to sink wells. Such a right has been held to be a valuable one as to petroleum oil, notwithstanding its fugitive and wandering nature, and an attempted invasion of such right enjoined. (*Westmoreland and C. N. G. Co.* v. *De Witt*, 130 Pa. St. 235.) It is true that in making a grant or lease with such a reservation in favor of his retained land, the grantor or lessor acts upon his own volition, and the value of the reservation depends upon his judgment, which may be influenced by the location of the different tracts and the area of granted and reserved lands and other considerations. But although the proceeding in condemnation is *in invitum*, these same matters can be taken into consideration in determining whether the reservation which the law makes in these minerals is of substantial benefit to the owner of the adjoining land. If this reservation is of no benefit, then, as a matter of course, the condemning party must pay for the easement whatever the value of the fee is ascertained to be. If, however, there is a beneficial ownership in the oils underlying the right of way, as these are reserved to the owner of the fee, the value of this beneficial ownership must be taken into consideration as something separate and apart from the value of the easement, and the value of the easement alone assessed against the condemning party. As in condemnation proceedings only an easement is acquired, this is all that the law requires shall be paid for.

We discover no reason why the rule pertaining to the determination of the value of an easement which is adopted with reference to mineral lands, where the minerals are *in situ*,

should not be applied to easements over oil-bearing lands. In principle there is no distinction, though as to oil lands the practical application of the rule may be more difficult. It no doubt will always be more difficult to prove whether a reserved right in oil is valuable or not, much more so than such a right in fixed minerals, but it cannot be said to be impossible to do it. It can hardly be that in every case where a right of way is sought to be condemned over a strip of oil-bearing land, that the valuable rights which were owned by the defendant when the condemnation proceedings were inaugurated, and which the condemning party does not acquire, are entirely lost to the defendant owning adjoining land by reason of the condemnation.

This disposes of the main point in the case, but appellant presents two other questions relative to rulings of the court.

It insists that the trial court should have granted its motion to strike out the testimony of the witness Rusk, called on behalf of defendant, as to the market value of the property in question, on the ground that it appeared from his cross-examination that his testimony in that respect was merely conjectural and speculative. We do not think so. The witness fully qualified himself on direct examination to give an opinion on the subject. On cross-examination he testified as to the matters which would influence him from the standpoint of a contemplating buyer in determining the market value of land in an oil-bearing territory; the number of wells which could be economically placed on the amount of land taken and ordinary losses therefrom; and the general relation of outlay to income. On cross-examination he entered into no details nor gave any estimates. These were matters which, it appears to us, would naturally be taken into calculation in forming a public and general estimate of the value of land of this character, and which would influence the minds of sellers and buyers with relation to it, and to which the witness could properly testify. It is true the witness, in addition, testified that he would take into consideration what "he could pay for it and have sufficient margin for speculation during at least five years," which, of course, is not a factor in determining market value, and if the motion to strike out had been addressed to this particular testimony it would, doubtless, have been granted. It afforded, however, no warrant for

striking out all the testimony of the witness, and the motion was properly denied.

It is further claimed that the lower court erred in refusing to allow appellant to prove a progressive decrease in the productiveness of the oil-field within which the land in question is situated. Upon the argument here, counsel for respondents do not discuss the right of the appellant to make such proof, but defend the ruling of the court on the ground that the question, as addressed to the particular witness, was too indefinite and vague. This was probably true. Upon a new trial, however, objection on that ground may be obviated. As a matter of right the appellant was entitled to introduce evidence upon the subject. Such evidence is admissible as bearing upon the market value of the land in question as oil-bearing land. As it is permissible to show that the land sought to be condemned is oil-bearing land, so it is permissible to show what kind of oil-bearing land it is, and to that end to show its degree of productiveness, whether increasing or decreasing.

The order denying the motion for a new trial is reversed, and a new trial ordered.

McFarland, J., and Henshaw, J., concurred.