[L. A. No. 3700. In Bank.—September 21, 1917.]

## CITY OF LOS ANGELES (a Municipal Corporation), Respondent, v. J. T. ZELLER et al., Appellants.

EMINENT DOMAIN—CONSTRUCTION OF SECTION 14, ARTICLE I, OF CONSTITUTION—ASCERTAINMENT OF DAMAGES.—In section 14 of article I of the constitution of California, relating to the taking of private property for public use, and providing how compensation for such taking shall be ascertained, the words, "as in other civil cases in a court of record," refer to the matter of fixing the compensation and not to the manner or means by which a jury trial may be waived.

ID.—STREET OPENING ACT OF 1903—CONSTITUTIONALITY OF—WAIVER OF JURY.—Section 8 of the Street Opening Act of 1903 as amended by Statutes of 1909, page 1035, which provides that a jury in street opening proceedings is deemed to be waived if not demanded upon the hearing of a motion to set the cause for trial, is not violative of section 14 of article I of the state constitution.

ID.—TRIAL WITHOUT OBJECTION.—Where parties appear and go to trial without objection, they will be deemed to have waived a trial by jury.

ID.—STREET OPENINGS IN LOS ANGELES—FIXING GRADE CROSSINGS BY RAILROAD COMMISSION—PUBLIC UTILITIES ACT.—Section 43 of the Public Utilities Act of 1911, making the permission of the Railroad Commission a prerequisite to the establishment of grade crossings of any railroad by a street, has no application to street openings and railroad crossings within the city of Los Angeles.

ID.—OPENING STREET OVER RAILROAD RIGHT OF WAY.—Opening a street over a railroad right of way does not destroy the value of the property for street railroad uses, especially where, as in this case, the right of way with tracks, wires and equipment was specially reserved to the railroad company.

ID.—COMPENSATION—INADEQUACY OF DAMAGES.—Nominal damages in the sum of ten dollars for taking the right to use as a street a strip of railroad right of way one thousand six hundred feet long and thirty-five feet wide is inadequate, and calls for a reversal of the judgment in view of the interruption of the railroad service by compulsory obedience to speed regulations, the added danger of accidents which could not ordinarily happen on a private right of way, the increased expense due to the railroad's duty to keep a part of the street in repair, and the taking from the railroad the right to affix waiting stations, switches, etc., to the land.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, Frank Karr, A. W. Ashburn, Jr., and R. C. Gortner, for Appellants.

Albert Lee Stephens, and Charles S. Burnell, for Respondent.

MELVIN, J.—In this case an opinion was prepared by the district court of appeal but subsequently an order was made transferring the case to this court, where an opinion was prepared and announced, but a rehearing was granted in order that a further consideration might be had of the action of the superior court in upholding a compensation merely nominal for the taking for use as a public street of a strip of land owned by a street railway and occupied by it for the purposes of its business. Upon further study of the matter a majority of the justices are of the opinion that the superior court erred in sustaining an award of damages in so small an amount. Upon the other questions discussed we reaffirm our former opinion, which was in part the adoption of the views of the district court of appeal. As given below, the portions in quotation marks are from that part of the former opinion prepared by Mr. Justice Sloss, and those in double quotation marks are from the opinion written by Mr. Justice James and originally filed in the district court of appeal.

" 'Appeal from a judgment and from an order denying the motion of appellants for a new trial.

" 'This action was brought by the city of Los Angeles to condemn for street purposes ground used as a right of way by appellant Pacific Electric Railway Company and to which ground said appellant held fee-simple title. The ground consisted of a strip of land approximately thirty feet in width and of more than one thousand feet in length, upon which was located rails, poles, wires, and the usual equipment of an electric railway. This strip of land was continuous, except that it was intersected and crossed by one street which was ninety feet in width. Other streets numbering four

abutted the right of way at right angles from the south, and one abutted the north line of the right of way at its westerly end. Sixteenth Street in the city of Los Angeles formed a continuance of the strip mentioned at the east, and along this street the tracks of the railway company extended, leading toward the center of the city of Los Angeles. The result of the condemnation proceedings, if successful, would be to open Sixteenth Street westerly throughout the length of the strip mentioned and form means of access from Sixteenth Street into and out of the several streets which were closed against the south line of the right of way strip. After preliminary proceedings had agreeable to the provisions of the Street Opening Act of 1903 (Stats. 1903, p. 376), suit was commenced and notice of motion to set the cause for trial given. At the time set for the hearing of this motion appellants did not appear, and the court thereupon appointed three referees to ascertain the compensation proper to be paid to the parties interested. This board of referees made its report and objections were filed thereto, both upon the part of the city, plaintiff, and appellants here. Before hearing was had upon the report, these appellants withdrew the objections made, and the court took up the matter on the objections raised on the part of the city. Before this latter hearing was had appellants made a demand for a jury trial, which was denied. The court at the hearing modified the report of the referees and made its order allowing to the appellants the sum of ten dollars for the taking of the parcels of land sought to be condemned, and allowing the sum of twenty-six thousand nine hundred dollars as damage to the property not taken of the appellants. Judgment followed accordingly.

" 'It is first claimed that a jury trial should have been awarded appellants upon their demand made prior to the hearing of the objections to the referees' report. In section 8 of the Street Opening Act mentioned, as amended in 1909 (Stats. 1909, p. 1035), it is provided that a notice of motion to set a cause for trial may be given by any of the parties and that "if, upon the hearing of such motion, a trial by jury or by the court without a jury is not demanded by the defendants, or any of them, or by the plaintiff, such trial shall be deemed to be waived, and the court must appoint three disinterested persons referees, to ascertain the compensation to be paid to such defendants so waiving a trial by a jury, or by the court

without a jury.'' There was a clear waiver of the right to trial by a jury made by the appellants, if the provisions of the Street Opening Act as just quoted are to be given any effect. Counsel contend, however, that the constitution of this state (section 14, article I) does not permit the waiver of a jury to be worked, except it be done in the manner which affects all civil actions alike. Section 14 of article I provides in part as follows: ''Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner, and no right of way shall be appropriated to the.use of any corporation other than municipal until full compensation therefor be first made in money or ascertained and paid into court for the owner, irrespective of any benefits from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in a court of record, as shall be prescribed by law. . . . '' It is insisted that the clause ''as in other civil cases'' is a limitation of the clause ''unless a jury be waived.'' We do not so construe the provision, but do construe it rather to the effect that the phrase ''as in other civil cases'' refers to the matter of fixing the compensation by a jury which is provided for in the sentence immediately preceding that referring to the waiver of a jury. As we would construe the provision, it would read in this way: ''which compensation shall be ascertained by a jury, as in other civil cases in a court of record.'' Section 7, article I, of the constitution provides that the trial by jury may be waived ''in civil actions by the consent of the parties, signified in such manner as may be prescribed by law.'' It follows, considering this section alone, that it is left to the legislature to determine as to what may amount to a waiver of the right to a jury trial in civil actions. The legislature in general has, by section 631 of the Code of Civil Procedure, provided that a waiver of the right to trial by jury is made by consent, oral or written, and by the failure of the party to appear at the trial. No reason appears why the legislature has not the same power in treating of the special matter of street improvements to provide that a waiver of the right to trial by jury shall occur when the parties affected fail to appear at the time the motion to set a day for the hearing of the cause is noticed to be made. Proceedings for the opening, widening, and improving of streets in municipalities form a

subject for special treatment and procedure, and the provision relating to the appointment of referees is one consistent with the proper nature and subject of such acts. It is appropriate that the matter of the appointment of referees shall be determined in advance of the date of a proposed trial, for if it is not demanded by the parties that the work assigned to be performed by the referees shall be performed by the court or by a jury, then there is no occasion for such trial to be had. If there is to be a trial by court or jury, there can be no referees. Hence, the effect under the provisions of the act of a motion to set a cause for trial is to give notice that referees are then to be appointed unless the parties appear and object thereto and require a trial by the court or jury. If they fail to so appear, their right to such a trial is waived, and properly so. The demand of the appellants for a jury trial made before the hearing on the objections of the city to the referees' report came too late. The trial had already been had; that is, the evidence had been taken by the referees and findings reported. It only remained for the court to consider the objections made to the report and to modify or confirm the same or set the report aside and appoint a new board of referees. At that stage of the proceedings there was no hearing pending at which it would have been appropriate to make use of the services of a jury. The record shows a complete acquiescence on the part of appellants in all of the proceedings taken in the condemnation matter up to the time the report of the referees came before the court for confirmation. In so far as objections to those proceedings might be waived, the circumstances are such as to show conclusively that the appellants are bound, because of their failure to seasonably raise objection thereto. In the bill of exceptions it is set out that the board of referees proceeded to take testimony to show the value of the land sought to be taken and the damages which would accrue, and nothing is therein shown which would indicate that the defendants were not present at such hearing. It would, therefore, appear that not only did they fail to make any objection to the hearing before the referees, which was in effect the trial, but that after filing objections to the report of the referees they withdrew these objections and left such report to stand, presumably approving thereof. Aside from any question as to the right of the legislature to make a special provision respecting the waiver of a jury trial

in street-opening cases, there is a general rule which is applicable where the parties have failed seasonably to make a demand for a jury trial. It is held that where parties appear and go to trial without objection before a court, they will be deemed to have waived a trial by jury. (*Boston Tunnel Co.* v. *McKenzie,* 67 Cal. 485, [8 Pac. 22] ; *Ferrea* v. *Chabot,* 121 Cal. 233, [53 Pac. 689, 1092].)' "

"The second point urged is that the city was without power to proceed with the condemnation suit until the railroad commission had acted and determined where the intersecting streets should cross the tracks of the railway company. It is sufficient, in answer to this point, to refer to our recent decision in *City of Los Angeles* v. *Central Trust Co.,* 173 Cal. 323, [159 Pac. 1169], where we held that, at the time these proceedings were had, the provision of section 43 of the Public Utilities Act of 1911, making the permission of the railroad commission a prerequisite to the establishment of grade crossings of any railroad by a street, had no application to street openings and railroad crossings within the city of Los Angeles.

" 'The further contention is advanced that there is no authority in a municipal corporation to take by condemnation the right of way of a street or other railroad, for the reason that property already devoted to a public use cannot be taken for the purpose of serving another public use. It is admitted that subdivision 4 of section 1240 of the Code of Civil Procedure in terms provides that property devoted to one public use may be appropriated for another public use where the latter is more necessary than the former. The subdivision mentioned further declares that the use as a public street or highway is deemed more necessary than any public use to which the property may already be devoted. It is claimed, however, that this latter provision violates the provisions of the constitution in that it amounts to special legislation. It would seem unnecessary to discuss the argument under this head to the last point mentioned. It was not proposed by the city in this case to annihilate or destroy the value of the property for the uses to which the railroad company was putting it; in fact, the use of the right of way was specially reserved to the railroad company, together with its tracks, wires, and equipment. There was no purpose manifested to destroy the utility of the right of way as a right of way for railroad pur-

poses. The city sought only to share the use of the ground by permitting the public to use it in common as a highway.' "

We now come to a consideration of that part of the court's action in allowing only the sum of ten dollars as damages for the taking of the parcel of land, one thousand six hundred feet long and about thirty-five feet wide, which was sought to be condemned. Admittedly this land is worth vastly more than ten dollars or any such trivial sum, but it was argued in the superior court and here that since the city wished to preserve, not to take away, the railroad company's use of the strip of land for transportation purposes, the injury resulting from the sharing of such purposes by the general public would be merely nominal. It is, of course, admitted that the corporation would be put to greater expense by the surrender of its exclusive use of the strip of land, but we are asked to assume that such detriment is covered by the large item of damages allowed by the court. Taking the latter contention first, we cannot see how an award of damages could possibly meet the condition, because the detriment caused by the appropriation of the land for a street would be so great and of a nature so diverse that no rational basis for the calculation of mere damages could be found. Some of the phases of such detriment would be (1) interruption of the service by compulsory obedience to the law regulating speed on public streets; (2) added danger of accidents of the sort that could not ordinarily happen on a private right of way; (3) increased expense due to the corporation's duty to keep a part of the street in repair, and (4) the taking from the railway corporation of the right to affix waiting stations, switches, and the like to the land. We cannot assume that these and other injuries to the owner of the property either were or could be met by the award of damages for property not taken. The trouble with the argument of respondent upon this and the other branch of the case is that it ignores the possibility of the use of the real property for any other purpose than the operation of a railway.

Concerning the supposed adequacy of ten dollars as an amount of compensation for the fee to the strip of land belonging to the corporation, Mr. Justice Henshaw wrote as follows when the case was previously under consideration:

"I cannot bring myself to believe that an award such as is here made, of ten dollars, for a strip of land one thousand

six hundred feet long by thirty-five feet wide, for which land unquestionably the appellant paid a large amount of money, is anything other than a cloak for confiscation. If one thousand six hundred feet may thus be taken, why not one hundred and sixty miles, and why may not the counties of the state adopt this method of condemnation of parts of steam railway rights of way, for which those companies have paid vast sums of money, and thus obtain highways for the use of the public without cost? I can perceive no parallelism between this case and a mere right of way for a highway *across* a steam railroad right of way. In the present case the fee is taken. In the crossing case but an insignificant easement is condemned. Moreover, steam railroads, so far as present knowledge goes, have a permanency which does not apply to suburban electric roads. It is foretold as to the latter that automobile transportation will soon drive out of existence most if not all of such lines, and indeed, as a matter of statistics, it is declared that more passengers are carried in the United States to-day by public service automobiles than are carried by all of the steam and electric railroads of the country and that the percentage is increasing. To permit a highway to be thus carved out of the privately owned right of way of a suburban electric road, upon which highway the service of the electric road will to its injury be put in competition with automobile service, presents an added feature establishing the grotesque inadequacy of the award here made. And, finally, should the railroad corporation owning this land ever feel impelled to abandon its railroad and devote this right of way to private use and sale, it will have been deprived of a strip containing considerably more than an acre for the sum of ten dollars, while there is no hazard in saying that its value to-day in the open market is easily as many thousand dollars.''

There is little to add to this expression of our views. Respondent has cited numerous authorities announcing the rule that an easement for a street across the right of way of a steam railroad may be granted for merely nominal compensation. Typical of such decisions is the leading case, *Chicago etc. R. R. Co.* v. *Chicago,* 166 U. S. 226, [41 L. Ed. 979, 17 Sup. Ct. Rep. 581], wherein the supreme court of the United States upheld a judgment of the supreme court of Illinois allowing nominal damages for the condemning of a right of way for a street

across the tracks of the railway company. That decision, which was by a divided court, carefully distinguished between the right to cross a railroad company's right of way and any further invasion of its property. In that case, at page 248 of 166 U. S., [41 L. Ed. 979, 17 Sup. Ct. Rep. 589], we find the following language used in the opinion:

"In its opinion in this case the supreme court of Illinois says that when a city council, under the authority of the act of April 10, 1872, extends the street across railroad tracks or right of way, 'it does not condemn the land of the railroad company nor prevent the use of the tracks and right of way.' (149 Ill. 457, [37 N. E. 78].) We take this to be a correct interpretation of the local statute and as indicating not only the interest acquired by the public through proceedings instituted for the extension of a street across the tracks and right of way of the railroad company, but also the extent to which the company was deprived, by the proceedings for condemnation, of any right in respect to the land. Such being the law of the state, it would necessarily follow that the jury, in ascertaining the amount of compensation, could not properly take as a basis of calculation the market value of the land as land. The land as such was not taken; the railroad company was not prevented from using it, and its use for all the purposes for which it was held by the railroad company was interfered with only so far as its *exclusive* enjoyment for purposes of railroad tracks was diminished in value by subjecting the land within the crossing to public use as a street."

At page 256 of 166 U. S., [41 L. Ed. 979, 17 Sup. Ct. Rep. 592], we find this significant language: "The right of the company to use the land or its right of way for as many tracks as it reasonably required for its business—if such right it had when the present proceedings were instituted—is not affected by the opening of the street in question. The opening of the street across the company's land—the city not acquiring the fee-simple title—was necessarily subject to the right, if any, of the company to lay down additional tracks if necessary in the proper conduct of its business."

It will thus be seen that the case from which these quotations are made and others of similar type are not authority for the taking for street purposes without material compensation of longitudinal strips over which electric railroads are operated in cities. Mr. Elliott in his work on Roads and

Streets (third edition) thus announces the rule: "A right to cross an existing public way with a street or road may often be implied where a right to longitudinally take the way would not be deemed to exist" [section 248], and in section 249 of the same work the learned author uses the following language: "A private corporation which acquires a right to construct a turnpike or a railroad, acquires it subject to the dominant right of the state to cross its turnpike or railroad whenever the public necessity demands that new roads or streets shall be opened. In accepting a grant from the state, the private corporation impliedly agrees that the sovereign right to provide the citizens with necessary highways shall not be impaired."

From the foregoing discussion it follows that the judgment and order must be reversed, and it is so ordered.

Henshaw, J., and Lorigan, J., concurred.

ANGELLOTTI, C. J., Concurring.—I concur in the judgment and also in the opinion except in so far as the last point discussed is concerned. As to that I also concur generally in the views expressed, and in the conclusion reached to the effect that the railroad company was entitled to a substantial sum as and for the taking of its property. As I understand the record, the *whole* of the strip of land, approximately thirty feet in width and one thousand six hundred feet in length, owned in fee by the company, is condemned for the purposes of a public street. Simply because the company is to be allowed to use this street for the same purpose that it is now using the property as owner, as a railroad right of way, nothing is allowed as for a taking of property, and this although such use will henceforth be the ordinary use in common with the public of a *public street,* subject to all conditions and restrictions imposed on railroad companies granted a right to use a public street as a right of way.

The more I consider this matter, the more strongly I feel that this view is not only manifestly unjust and inequitable, but also unwarranted in law. The relative situation as regards this property prior and subsequent to the condemnation is well set forth by counsel for the company as follows: "The defendant is the owner of the fee and had, before the condemnation, the right to excavate and carry away any por-

tion of the soil or to change the grade of its road at will, or to store ties, poles, or other materials along the right of way, or to build sidetracks, to store cars thereon, or to build waiting stations, platforms, depots, warehouses, repair-shops, or other structures upon said strip of land (which is not entirely occupied by the existing tracks), to fence the same against trespassers, and to exclude all of the public from travel thereon except when transported in the defendant's cars, and to use it in any other way that the owner of property may use it, either on, above, or below the surface of the earth, so long as the use is not such as to become a nuisance. But by the, condemnation in the case at bar, by the paving of the street, which will follow, the city has taken from the defendant all of the substantial value of its ownership of the land, and has left it, as we said before, only the right to use the surface as one of the general public, subject, of course, to increased hazard of accident, increased expense of operation and maintenance, impaired running time, and very substantially impaired enjoyment of the property in general. The control over the surface of the ground is now vested in the city, instead of the defendant, and the use of the subsoil has become nil.''

To my mind there is here an actual taking of property within the meaning of our law relative to eminent domain, and the company is entitled, as a prerequisite to such taking, to a substantial sum as and for the value of the property thus taken. The crossing cases are sufficiently distinguished, to my mind, in the opinion.

As already noted, the property sought to be condemned does not constitute "only a part of a larger parcel" (Act of 1903, sec. 10, Stats. 1903, p. 379). The *whole* of a parcel of land owned and used by the railroad company is thus taken for street purposes. I doubt, therefore, if there is any basis for an award to the company except as and for the value of the "property sought to be condemned, and all improvements pertaining to the realty."

Lawlor, J., concurred.

SHAW, J., Dissenting.—I dissent from the judgment of reversal and from that part of the opinion holding that the sum of fifteen dollars is an inadequate allowance for the value

of the estate to be taken by plaintiff from the Pacific Electric Railway Company in the strips of land used by it for its railway between Los Angeles and Santa Monica. The amount allowed was fifteen dollars and not ten dollars as stated in the main opinion.

The Railway Company originally acquired these strips of land as a place whereon to lay its railway tracks and place its poles, wires, and other appliances appurtenant thereto along that part of its line. Thereafter it built its tracks, established its line, and has ever since maintained and operated its railway system upon and over said strips. It acquired the fee-simple title to the land. The estate therein necessary for railway purposes, however, was not a fee, but only an easement.

The record shows that the city did not seek nor ask to condemn or take this easement, this right of use by the Pacific Electric Railway Company for its railway, but that, on the contrary, the court below, in pursuance of a stipulation between the parties, stated in its conclusions of law that this easement for railway purposes, with all its appurtenant structures and appliances, should be reserved to and was to remain in the Railway Company, and that the city was to acquire only an easement in the land for public use as a street, but subordinate to the right or easement of the Railway Company aforesaid.

An estate in fee is divisible in various ways not involving a division of the surface of the land. It may be divided into a number of qualified estates. Different easements or subordinate estates may be carved out of the fee, and such easements or estates may be sold separately and to different persons by the owner of the fee. The Railway Company, if it had so desired, could have conveyed its railway, with the easement necessary for its maintenance and operation, to one person, a subordinate easement for the servient use of the land as a public street to another person, and the fee burdened with these two easements to still another. Being separable interests or estates in the land, they are susceptible of a separate valuation.

The only property proposed to be taken by the city was the subordinate easement for a public street. For this taking the Railway Company was entitled to the just value of the estate taken. This value was to be, and was, ascertained and

found by the court below from the evidence. There was abundant evidence to the effect that the value thereof did not exceed the fifteen dollars allowed. This is admitted. The testimony was that the strips of land subject to a perpetual easement for railway purposes had no substantial value. A mere subordinate easement would, of course, have even less value.

There remains as an element of value only the remote possibility that at some unknown time in the future, in the uncertain course of future events and developments, the Railway Company may cease or abandon the operation of its line, or, that its right to do so may be forfeited, in which case the servient fee, relieved of the depreciative burden of railway use, would again become of value as unburdened land, if not appropriated to public use as a street. If this could be assumed to occur at a definite time in the future, it would afford a basis for estimating a present value equal to the present worth of the value when the event occurred and payable at that time. The time, of course, cannot be predicted. No attempt was made at the trial to do so, or to elicit from any witness a valuation based on the uncertain contingency of a cessation of the railway use or the forfeiture of the right. The possibility of an abandonment or forfeiture, or of a present value arising from such future possibility, was not even suggested. The only evidence of value consisted of varying estimates based on the hypothesis that the land was burdened with a perpetual easement for railway use.

In these circumstances all that this court can properly say as to the value of this subordinate easement to be taken by the city is that the court below has made a finding that its value is fifteen dollars and that this finding is fully supported by legal evidence given at the trial. There are no facts of which the court can take judicial notice that would defeat the effect of this evidence.

There is another branch of the case, the question of damages to property not taken, caused by the public use to which the city proposes to devote the easement which is to be taken. This appears to have produced some confusion of ideas on the question of the value of the estate actually taken. The owner of land taken for a public use is entitled not only to the value of the land actually taken, or of the estate or interest that is actually taken from him in such land, but also

to the damages which such taking will directly cause to property belonging to him which is not taken. The Constitution declares that "private property shall not be taken or *damaged* for public use without just compensation." The act of 1903, under which this action was begun, provides that the court shall find, separately, first, the value of each parcel of land to be taken "and each separate estate or interest therein"; second, if the part taken is part of a larger parcel, the damages which will accrue to the part not taken "and to each separate estate or interest therein," by reason of its severance from the part taken and the construction of the improvement in the manner proposed by the plaintiff (sec. 10, Stats. 1903, p. 376). The code, which that act adopts for the mode of procedure by action, contains substantially the same provisions on the subject. (Code Civ. Proc., sec. 1248, subds. 1, 2.) The damage caused to an easement by the taking of a subordinate easement for public use may not be well described either in the code or in the act of 1903, but it is covered by the constitutional guarantee, and therefore it was properly allowed and its payment imposed by the court as a condition precedent to the taking.

There was evidence to the effect that the appropriation of the surface of these strips of land to use as a street, though subordinate and subject to the use for railway purposes, would nevertheless entail greater expense upon the railway in the maintenance and operation of its railway system, because of the necessity of adjusting its tracks to the grade established for the street and because of the greater dangers to persons rightfully using the street for ordinary travel. This would require greater care to avoid injuring them and subject the Railway Company to increased liability to damages growing out of the negligence of its employees in that respect.

This element of damage forms no part of the value of the easement actually taken. It affects only the estate which is not taken but which is to remain in and belong to the Railway Company as before, that is, its paramount right to the continuous use of said strips of land for railway purposes. It is, properly speaking, damages caused to the property not taken, damages thereto caused by the use to be made of the property actually taken. This damage was also the subject of testimony given at the trial, and upon that evidence the court be-

low allowed the Railway Company, as compensation, the sum of twenty-six thousand nine hundred dollars.

It is further claimed that the use as a street will prevent the Railway Company from storing ties or other railway material on the parts of the strips adjoining the tracks, temporarily, for the convenient making of repairs or other operations in the maintenance of the railway use, and from building waiting-stations, sidetracks, or other structures convenient for railway operation and maintenance, on the parts not occupied by the tracks nor necessary for the passing of cars over them. These rights constitute a part of the easement for railway purposes which is to be reserved to the company, and with which, according to the stipulation, the use as a street must not interfere, and are not to be considered as elements of damage or value.

The incidental interference with these operations arising from the public use as a street constitutes a damage to the railway easement not taken and is included in the aforesaid damage allowance. The right to store ties or other material on the adjacent ground for purposes not necessary for immediate repair or maintenance was not shown to be of value and was not the subject of separate investigation at the trial. The court cannot know judicially that it has a substantial value. The right to take away the soil and to use it in other ways not inconsistent with the railway use was taken into consideration by the witnesses who testified to the value of the property taken, and the findings based on that testimony are conclusive upon this court on appeal.

In my opinion the findings of value and damages are supported by the evidence and the conclusions of law thereon are correct. By inadvertence the judgment as drawn does not conform to the findings and conclusions of law, in that it does not contain the reservation to the Railway Company of its paramount easement for railway purposes. But this is plainly a mistake and could be remedied by modifying the judgment.

Sloss, J., concurred.