[Civ. No. 8292. First Appellate District, Division One.—February 4, 1933.]

CITY OF SAN GABRIEL (a Municipal Corporation), Plaintiff and Respondent, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation) et al., Defendants and Respondents; WILLIAM CHAPMAN et al., Appellants.

Charles Lantz and Winslow P. Hyatt for Appellants.

Dryer, Castle & Richards, R. B. McConlogue, Frank Karr and C. W. Cornell for Respondents.

THE COURT.—The City of San Gabriel brought this action, under the "Acquisition and Improvement Act of 1925", to condemn, for the widening of Las Tunas Drive, a strip of land 32 feet wide and 5,912 feet long, used by respondent Pacific Electric Railway Company (hereinafter called the company) as part of its right of way for the operation of its interurban electric railway between Los Angeles and San Gabriel. As to 300 feet in length of such strip, appellants owned the fee, subject to an easement in favor of the company. The remaining length was owned in fee by the company. The interlocutory judgment in condemnation awarded, as damages to appellants for the value of their interest in such 300 feet, the sum of one dollar and to the company for the value of its interest in the entire strip, together with improvements thereon, the sum of $43,276, and for compensation, by reason of the necessity of· the relocation and structural changes in the interurban railway tracks and structures, the sum of $97,035. Appellants appeal from the portion of the judgment awarding them one dollar.

Relying upon the particular wording of the resolution of intention, complaint and interlocutory judgment, appellants argue that the city sought and obtained the condemnation of the fee, rather than the easement. The resolution provided as follows: "Sec. 1. That the public interest and

necessity require, and that it is the intention of the City Council . . . to order the following *acquisitions* for Las Tunas Drive. . . . Sec. 2. That the *property* necessary to be taken for such widening . . . [is] described as follows: That certain *strip of land* . . . '' The complaint alleges that, for the purpose of widening Las Tunas Drive, ''it is necessary that plaintiff take and condemn for public use the *lands* described . . . towit: That certain *strip of land*'', . . . ''That the names of all the owners and claimants of the *property* sought to be condemned . . . are set forth . . . '' and that the lands to be taken ''embrace that *piece* or *parcel of land* particularly described as . . . That certain *strip of land* . . . '' (Italics ours.) The judgment decrees that the real property shall be condemned to the use of the city and the public and shall be dedicated for the widening of Las Tunas Drive. It may be conceded, as appellants contend, that, in none of the three documents, is there any limitation of the estate taken to an easement, but it does not follow, therefore, that the fee was condemned. ▉ Where an easement is sufficient for the purposes of the use, the fee will not be deemed to be appropriated unless so stated expressly or by necessary implication in the statute or judgment of condemnation. (*McCarty* v. *Southern Pac. Co.,* 148 Cal. 211 [82 Pac. 615].) ▉ Under section 1239, subdivision 2, of the Code of Civil Procedure, the city might have condemned either an easement or a fee, but if it wished the latter, it was necessary for its council, by resolution, to have determined that the taking of a fee was necessary. (*City of Oakland* v. *Schenck,* 197 Cal. 456 [241 Pac. 545].) Since the resolution of intention did not so determine, an easement only was condemned.

▉ The respective answers of the company and appellants raised conflicting claims to the property, which section 1247 of the Code of Civil Procedure empowered the trial court to determine. (*City of Los Angeles* v. *Pomeroy,* 124 Cal. 597 [57 Pac. 585]; *City of Los Angeles* v. *Darms,* 92 Cal. App. 501 [268 Pac. 487].) The court found that the company owned a *perpetual* easement for railroad purposes over and upon said 300 feet and that appellants owned the fee thereof, subject to the *perpetual* easement for *railroad* uses granted to the company by appellants, such grant of easement being subject to condition subsequent and condi-

tioned upon the use of the property as a right of way for an *electric* railway. This determination of the diverse interests of the parties not only established one factor, governing the award of damages, but also constituted an. adjudication of their conflicting interests. (*Anderson* v. *Citizens Sav. etc. Co.*, 185 Cal. 386 [197 Pac. 113].) As this finding is based solely upon a deed from appellants to the company, the correctness of the finding can be determined by an examination of that instrument. The deed, so far as here important. granted the right of way for electric railway purposes (1) reserving the right to use any part not used by the company (2) upon the condition, a breach of which worked a forfeiture, and that the line of said right of way shall be defined by a low fence or cement curb and (3) with a reversion when the whole or any part ceased to be used as a right of way for an electric railway. Other conditions subsequent not here involved are omitted.

The deed, although unlimited as to time, does not use the word "perpetual", but the insertion of that adjective in the finding does not lengthen the life of the grant, because perpetuity is an inherent characteristic of a railroad right of way, so created. (51 C. J. 540; 22 R. C. L. 861.) In discussing the nature of a railroad right of way, created by a congressional grant, the United States Supreme Court, in *New Mexico* v. *United States Trust Co.*, 172 U. S. 171, 183 [19 Sup. Ct. Rep. 128, 133, 43 L. Ed. 407], said: "But if it may not be insisted that the fee was granted, surely more than an ordinary easement was granted, one having the attributes of the fee, perpetuity and exclusive use and possession; also the remedies of the fee, and, like it, corporeal, not incorporeal, property.

"In *Smith* v. *Hall*, 103 Iowa, 95 [72 N. W. 427], the Supreme Court of Iowa says, speaking of the right of way of a railroad: 'The easement is not that spoken of in the old law books, but is peculiar to the use of a railroad which is usually a permanent improvement, a perpetual highway of travel and commerce, and will rarely be abandoned by non-user. The exclusive use of the surface is acquired and damages are assessed on the theory that the easements will be perpetual; so that ordinarily the fee is of little or no value unless the land is underlaid by a quarry or mine.'

" 'The right acquired by the railroad company, though technically an easement, yet requires for its enjoyment a use of the land permanent in its nature and practically exclusive.' *Hazen* v. *Boston & Maine Railroad,* 2 Gray 574, 580.''

More recent enunciation and application of the same principle, with citation of additional authorities, may be found in *Midland Valley R. Co.* v. *Jarvis,* 29 Fed. (2d) 539 [61 A. L. R. 1064]. While conceding the rule as to steam railroads, appellants without advancement of any reason or citation of any authority except *City of Los Angeles* v. *Zeller,* 176 Cal. 194 [167 Pac. 849], where, in the course of argument, an opinion as to the relative permanency of steam and interurban railways was expressed, which subsequent events has proven incorrect, deny its applicability to an interurban railway. An electric interurban railway is a sort of hybrid, having in some respects the characteristics of a steam or commercial railroad and in others those of a street railroad. (*San Francisco etc. Ry. Co.* v. *Scott,* 142 Cal. 222, 232 [75 Pac. 575].) As to its construction and operation over a private right of way it has the character of a steam railroad. (*Simoneau* v. *Pacific Electric Ry. Co.,* 159 Cal. 494 [115 Pac. 320]; *City of Los Angeles* v. *Los Angeles Pacific Co.,* 31 Cal. App. 100 [159 Pac. 992]; *Lindsey* v. *Pacific Electric Ry. Co.,* 111 Cal. App. 482 [296 Pac. 131].) While superficial differences, in the means and manner of performing the same public service, exist between the two types, such as in motive power (unimportant because of Civ. Code, sec. 465a), track construction, equipment and distance of travel, yet each is a permanent improvement, a perpetual highway of travel and commerce, subject to the same possibility of abandonment and each require the same exclusive use of the surface of the right of way. Since the reasons for holding the right of way of a steam railroad as a perpetual easement are equally applicable to that of an electric interurban railway, the rule should be and is the same as to both kinds of railroads.

▮ The omission, in the forepart of the finding, of the adjective ''electric'' from the phrases ''for railroad purposes'' and ''for railroad uses'', did not extend, beyond the terms of the grant, the purposes or uses to which the right of way could be put, because the end of the finding states

that the easement was granted upon the condition that it be used for an electric railway. The conflict, if any, between the two parts, would, at most, merely create an ambiguity, which would be removed by an inspection of the grant expressly referred to in the finding. Any doubt is entirely dissipated by the interlocutory judgment, which decreed that the company is the owner of a perpetual easement or right of way for electric railway purposes and that appellants are the owners of the fee, subject to a perpetual easement for a right of way for an electric railway, granted by the deed, identified by place of recordation. ▉ The city's act, in removing the fence and installing a cement curb, under an order for immediate possession obtained upon commencement of this action, did not work a forfeiture of the company's title, because obviously it was not responsible for the exercise by the city of its legal right. Since the condition subsequent merely says that the line of the right of way shall be defined by a fence or curb without stating who should construct either, appellants, under a strict interpretation required by section 1442 of the Civil Code, have not clearly established any duty resting upon the company, a breach of which would work a forfeiture. Neither the finding nor the judgment expressly mentions either the reservation or the reversion. The finding very evidently, when speaking of the right of way as conditioned upon use for an electric railway, confused, as is commonly done, condition with reservation and reversion and intended to include all three. Any uncertainty as to appellants' rights is entirely removed by express reference in the finding and the judgment to the deed creating the easement.

▉ Usually there is no substantial difference in value between such an easement and the fee of which the law will take notice. (*Southern Pac. R. Co.* v. *San Francisco Sav. Union*, 146 Cal. 290 [79 Pac. 961, 106 Am. St. Rep. 36, 2 Ann. Cas. 962, 70 L. R. A. 221].) Under the deed, appellants had in theory a reserved right to use such parts of the right of way as the company did not, and a reversionary interest arising from forfeiture or nonuser. At the time fixed by law for the valuation of their interest, the reservation was not being used nor had the reversion occurred. The enjoyment of these rights was entirely dependent upon the volition of the company. The possibility of their en-

joyment is so remote, speculative and contingent that they cannot be said to add any value to appellants' interest. As long as the easement existed it has for all practical purposes entirely absorbed the full value of the fee. (*Southern Pac. R. Co.* v. *San Francisco Sav. Union, supra.*)

By quoting a portion only of a finding, appellants make it appear that the court awarded $43,276, as the value of the land condemned, together with improvements thereon and $97,035 as damage to the improvements on the same land and, from this false premise, argued that there was duplicate compensation for damages to the same improvement. The finding, however, does not so provide, but, in accordance with section 31 of the "Acquisition and Improvement Act of 1925", correctly allowed the first sum as the value of the land condemned with improvements thereon and the second amount as the cost of relocating tracks and other structural changes. While this action only involved the condemnation of lands for the widening of Las Tunas Drive, the proceedings, of which this action forms only a part, included also the improvement of the land taken by the physical construction of the improvement. No question is raised that the improvement of the land condemned as proposed in the resolution of intention will not necessitate such relocation and structural change nor that the costs allowed are too high. The case of *City of Oakland* v. *Schenck, supra,* cited by appellants is authority for the rule that in condemning a railroad right of way for a street crossing the city is not required to pay the cost of structural changes in the railroad tracks. Here Las Tunas Drive is being widened by a longitudinal condemnation of a right of way, not being extended across a right of way. The right to these items of damage in longitudinal condemnation is recognized in *City of Los Angeles* v. *Zeller, supra,* and *City of Los Angeles* v. *Allen,* 32 Cal. App. 553 [163 Pac. 697].

The judgment is affirmed.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 3, 1933.