[Civ. No. 1833.  Second Appellate District.—January 22, 1917.]

CITY OF LOS ANGELES (a Municipal Corporation), Respondent, v. SAMUEL S. ALLEN et al., Defendants; PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), et al., Appellants.

EMINENT DOMAIN—STREET RAILROAD PROPERTY—DAMAGES—EVIDENCE. In an action brought by a municipal corporation for the condemnation of certain lands for the opening and widening of a street, pursuant to proceedings had under the Street Opening Act of 1903, a street railroad corporation which owns a right of way over a part of the lands sought to be condemned, and upon which it maintains and operates a railroad, is entitled to introduce evidence of the nature and extent of the proposed improvement, and the changes in the railroad required thereby, for the purpose of showing the extent of its damage.

ID.—CONSTITUTIONAL LAW—TAKING OF STREET RAILROAD PROPERTY— COMPENSATION.—Taking of property of a street railroad for street purposes, longitudinally covering its right of way, is a taking within the meaning of article I, section 14, of the constitution, providing that private property shall not be taken for public use without just compensation.

ID.—MEASURE OF DAMAGES.—The measure of damages for property of a street railroad taken by a city for street use, longitudinally covering its right of way, is the decrease in value of the use of the land for railroad purposes by reason of its use for street purposes.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Frank G. Finlayson, Judge.

The facts are stated in the opinion of the court.

Frank Karr, R. C. Gortner, and A. W. Ashburn, Jr., for Appellants.

Albert Lee Stephens, City Attorney, and Charles D. Pillsbury, Deputy City Attorney, for Respondent.

CONREY, P. J.—This action was brought by the city of Los Angeles for the condemnation of certain lands for the opening and widening of Sunset Boulevard within described limits, pursuant to proceedings theretofore had under the

Street Opening Act of 1903. Part of the land sought to be condemned is a parcel which is owned in fee by Pacific Electric Railway Company, subject to a mortgage interest thereon held by the other appellant, United States Mortgage and Trust Company. The premises to which the controversy refers are a continuous strip of land (with the exception of the intersection of a street crossing), twenty-five feet in width and approximately one thousand one hundred feet in length, upon and over which the defendant Pacific Electric Railway Company maintains and operates an electric interurban railroad for the transportation of passengers and freight. After the issues had been framed, the cause was referred to referees to compute the damages of the respective parties defendant, and those referees, after taking evidence, made their report, to which report exceptions were filed on behalf of the appellants. After receiving evidence concerning the value of the land and the damages to be awarded, the court confirmed the report of the referees so far as the same related to the said parcel, and an interlocutory judgment was entered condemning the demanded interest in this land, together with other lands, and thereby provided for the payment of one dollar to the Pacific Electric Railway Company for the taking of said parcel, without other compensation, and determined that the security of the mortgagee was not impaired by the taking and that it was not entitled to receive compensation herein. The above-named defendants have appealed from the interlocutory judgment and from an order denying their motion for a new trial.

In its complaint the plaintiff alleged that it does not by these proceedings seek to prevent the defendant railway company from operating its electric road over and across the described land, "but seeks only to condemn said land to a public use for the opening and widening of Sunset Boulevard in the manner proposed in this action by plaintiff, and does not seek to interrupt the maintenance and operation of said electric railway over, along and across said parcel or parcels of real property last above described. Plaintiff further alleges that it seeks to condemn said parcel or parcels of land in such manner as to regulate and limit the said use thereof so that said use may not interfere with the proper use of said parcel or parcels of land as a public street under the law."

The interlocutory decree limits the condemnation in like terms as above stated.

There were numerous defendants, but in this decision when we refer to the defendants, we mean the present appellants. The defendants insisted that the court should require the plaintiff to prove the nature and extent of the proposed improvement, and the extent of the structural changes in the railroad which will be necessitated thereby. This the court declined to do, and the plaintiff offered no such evidence. The defendants then introduced evidence to show the value of the land on the sixth day of October, 1913, which it is not denied was the correct date to which the evidence in this case should refer. Their witnesses testified to substantial valuations, amounting to many thousands of dollars, and it is not necessary for us to state or compare the figures given. This evidence related to the market value of the land as held in fee, subject to the right to maintain and operate the railroad thereon, but without the street. Other testimony introduced by the defendants was to the effect that the value of such fee, subject to the right to maintain the railroad, and also subject to the easement for public street purposes, was nothing. The court also rejected evidence offered by the defendants upon the same points above noted, and which it had held that the plaintiff need not prove. The court also sustained objections of plaintiff to questions propounded for the purpose of ascertaining the cost of paving the street and of reconstructing the railroad as would become necessary according to plans and specifications for street improvements which, as defendants offered to show, are proposed and expected to be made as soon as the street opening proceedings are completed. It is now insisted that these rulings constituted prejudicial error.

Section 10 of the Street Opening Act of 1903, as amended in 1909 (Stats. 1909, p. 1038), provides that the actual value of the property sought to be taken at the date of the order appointing referees or of the order setting the cause for trial, as the case may be, shall be the measure of compensation for all property to be actually taken and the basis of damages to property not actually taken but injuriously affected, in all cases where such damages are allowed by the provisions of that act. It is further provided that the referees or court or jury, as the case may be, shall find separately, "First: The value of each parcel of property sought to be condemned,

and all improvements thereon pertaining to the realty, and of each separate estate or interest therein; Second: If any parcel of property sought to be condemned is only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned, and to each separate estate or interest therein, by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff. . . . '' Section 1248 of the Code of Civil Procedure, which is the general statute as to proceedings in condemnation cases, is to like effect. Section 1241 of the Code of Civil Procedure provides that where property has been appropriated to a public use by any individual, firm, or private corporation, the use thereof for a public street of a city or for any public purpose, shall be deemed a more necessary use than the public use to which such property has been already appropriated.

Section 1240 of the Code of Civil Procedure, in subdivision 4 thereof, declares that where property already appropriated to a public use or purpose by any person, firm, or private corporation, is sought to be taken by a city for another public use or purpose which is consistent with the continuance of the use of such property, or some portion thereof for such existing purpose, to the same extent as such property is then used, or to a less or modified extent, then the right to use such property for such proposed public purpose, in common with such other use or purpose, either as then existing, or to a less or modified extent, may be taken by such city, and the court may fix the terms and conditions upon which such property may be so taken, and the manner and extent of the use thereof for each of such public purposes, and may order the removal or relocation of any structures, or improvements therein or thereon, so far as may be required by such common use. This provision of subdivision 4, although since amended, was originally added to that subdivision in the year 1911 (Stats. 1911, p. 620), which is subsequent to the date of section 10 of the Street Opening Act of 1903 as that section was last amended. Under its power of control over streets, the city, after the easement (commonly so called) for street purposes has been acquired, will have the right to establish and change grades, to require that the railroad conform to the grades established, to order changes in location of poles, and other structural changes, and to enforce ordinances as to

speed of trains, and other regulations necessary to conform
to the established general uses of the street, but which may
be not beneficial to the defendants.   These requirements being
made under the police power, and not as a further exercise
of powers of condemnation, the railway company will not
then receive compensation, although it may be put to large
expense in obeying the city's orders.   And while the taking
of the easement for street purposes will vest in the city all
these rights affecting the railway company in the exercise of
the company's reserved right to operate its railway over that
land, it is not necessary to require proof by plaintiff of any
particular regulations or improvements which may be deter-
mined upon hereafter.   But it does not follow that in the
condemnation proceeding, the defendants, in proving the
amount of their rightful compensation, should be denied the
right to show what kind of a street probably will have to be
constructed, or be denied all compensation for damage caused
to the value of the property interests retained by them, if
that value is being diminished by the fact that the city is
taking over an interest in the property for street purposes.
"Private property shall not be taken or damaged for public
use without just compensation having been first made to, or
paid into court for, the owner. . . . "   (Const., art. I, sec.
14.)   Here the city proposes to take from the owner a certain
interest in land, leaving the owner in possession of the land
for the exercise of certain valuable rights.   But although
those rights, as well as the fee, are to remain vested in the
owner, it is proposed to create conditions affecting the owner
in the use of those rights; conditions which will diminish the
value of the company's remaining interest in the land.   To
say that a condemnation of this kind is not a damaging of
property thus affected, within the meaning of the constitution,
is to deny to that instrument a meaning which it must have
under any reasonable interpretation of its language.   We can-
not agree with the implication in the argument of respondent's
counsel, that the process of condemnation is a mere abstrac-
tion or intellectual concept.   Its results are concrete, its
interferences are to be actual, and the compensation therefor
should be real.

   In ordinary cases where the condemnation is for a right of
way for a use which constitutes a perpetual easement, and
which will require practically the exclusive use of the surface,

evidence is permitted to show, and the condemning party must pay, the value of the fee as the measure of damages sustained. Under such circumstances, in the nature of things there can be no difference in value between the easement taken and the fee. ''When, however, such a difference does exist, the rule is different, and the value of the easement taken as distinguished from the value of the fee is alone to be ascertained by the jury and the owner compensated therefor.'' (*Southern Pacific R. R. Co.* v. *San Francisco Sav. Union,* 146 Cal. 290, [106 Am. St. Rep. 36, 2 Ann. Cas. 962, 70 L. R. A. 221, 79 Pac. 961].) In the cited case the proposed right of way consisted of a strip of oil-bearing land along the boundary of a tract of oil-bearing land owned by the defendant. It was held that the plaintiff was entitled to show that the oil beneath the surface was a valuable right in property, reserved to the owner, and which might be utilized by wells sunk on the adjoining tract. This being so, the plaintiff was entitled to prove the value of these property rights vested in the owner of the fee, and to have that value considered in reduction of the amount of compensation to be awarded. If such evidence is admissible on behalf of the plaintiff, it would seem that on the same principle similar evidence should be admitted on behalf of the defendant for the purpose of proving the true value of the easement imposed upon his land, and the reduction in value of the rights that will remain vested in the defendant, in any case where the power of eminent domain is being used to acquire less than the entire valuable interest in the property. Let it be admitted, for example, that the value of the property in the hands of the defendants prior to condemnation by the city, and as it stands devoted to perpetual use for railroad purposes, is twenty thousand dollars. Let it be further admitted that the value of the fee, apart from the railroad use, is nominal. The result follows that the railroad's right to use its land for railroad purposes is worth twenty thousand dollars. Now comes the city and seeks to take an interest in the same land for use as a street, without requiring the absolute removal of the railroad therefrom. If, now, it can be shown that the actual establishment of the street, with the incidents attached thereto, will probably require structural changes in the railroad, and limitations not now existing upon the operation of the railroad, which changes and limitations will reduce the value of the

property for railroad purposes, the conclusion must follow that the city in condemning the property for street purposes is taking from the defendants valuable property rights, or, stating it perhaps more accurately, is causing damage to the remaining interest of the defendants in the property; a damage for which, according to the fundamental law of the state, the owner is entitled to compensation.

It has been suggested that the rulings of the court below, and its award of only nominal compensation to the defendants, were based upon the authority of a decision of the supreme court of the United States in *Chicago, B. & Q. Ry. Co.* v. *City of Chicago*, 166 U. S. 226, [41 L. Ed. 979, 17 Sup. Ct. Rep. 581]. That decision affirmed a judgment of the supreme court of Illinois sustaining a judgment wherein the sum of one dollar was awarded as the just compensation to be paid to the railroad company for taking by condemnation a part of its right of way for putting a public street across that right of way in the city of Chicago. The United States supreme court was called upon to determine whether the rulings of the state court were in disregard of that part of the fourteenth amendment which provides that no state shall deprive any person of his property without due process of law, or deny the equal protection of the laws to any person within its jurisdiction. Having determined that the rulings and decision of the Illinois courts were not in conflict with the requirements of the federal constitution, the United States supreme court adopted the law as declared by the supreme court of Illinois as the controlling statement of the law in a matter which was only of state concern. "We may say in the present case that the state court having jurisdiction of the subject matter and of the parties, and being under a duty to guard and protect the constitutional right here asserted, the final judgment ought not to be held to be in violation of the due process of law enjoined by the fourteenth amendment, unless by its rulings upon questions of law the company was prevented from obtaining substantially any compensation." It is the constitution of the state of California, as it was the constitution of the state of Illinois, and not that of the United States, which pledges the state that private property shall not be taken or damaged for public use without just compensation. The similar provision in the fifth amendment of the constitution of the United States need not be considered, since

that amendment is one of those which are restrictive of the powers of the federal government and not restraints upon the states. So far as the federal constitution is concerned, it is only necessary that the state, in depriving persons of their property for public use, shall protect those persons in their right to due process of law and their right to the equal protection of the laws. As long as those rights are duly recognized and protected, the remaining duty of a state court is to determine the true meaning of those provisions of the state law which provide for the compensation to be awarded for the taking or damaging of private property. Assuming (without deciding), that the law of California might, without violating the provisions of the fourteenth amendment, refuse to make any allowance to a railroad company in a case like the present, for the expense which it will incur in making changes in its railroad which become necessary by reason of the construction of the street, and might refuse to allow for any consequent damages to the value of the railroad easement, surely there is no obligation created by the federal law which will prohibit the state from more adequately protecting the property owner from losses caused by public improvements. We are called upon to determine what the law of the state has actually provided, and are not to be guided by any rule to the effect that the state shall pay as little as it may possibly be made to pay without violating the fourteenth amendment. Even in the case referred to, the supreme court of the United States declared that the value to the railroad of that which was taken from it is "the difference between the value of the right to the exclusive use of the land in question for the purposes for which it was being used, and for which it was always likely to be used, and that value after the state acquired the privilege of participating in such use by the opening of a street across it, *leaving the railroad tracks untouched.* Upon that theory the case was considered by the jury, and the court did not err in placing it before them upon that basis as to compensation." The difficulty with the case at bar is that the court has refused to take into consideration evidence which would have enabled it to determine the difference between the value of the right to the exclusive use of the land in question for the purpose for which it was being used and for which it was always likely to be used, and that value after the city acquires the privilege of participating in such use

by the opening of a street over it; and has refused to receive
evidence bearing upon the question whether or not the city
in taking the property for street purposes will leave the rail-
road tracks untouched.

There is an important difference between the extension of
a street crossing over a railroad track and a taking for the
purpose of constructing a street longitudinally covering a
right of way. "The right to take longitudinally is very dif-
ferent from the mere right to cross, for in the one case the
rights of the railway company are materially impaired, while
in the other the taking is such that both uses can stand to-
gether." (Elliott on Railroads, 2d ed., sec. 1098. See, also,
Elliott on Roads and Streets, 3d ed., sec. 249; Pierce on Rail-
roads, p. 193.) It has been held that when a railroad cor-
poration owns only an easement in the land which it occupies,
the imposition of another easement on the same land wholly
consistent with the complete and undisturbed enjoyment of
the original use, is not a taking of property, and that if there
is an interference with the original use, there is a taking only
to the extent of such interference. The corporation having
the original right is not, when the land is occupied concur-
rently by another corporation, entitled to recover the value
of the land as measured by the most advantageous use to
which it could be put. The true measure of damages in each
case is the decrease in the value of the use of the land for
the first purpose by reason of its being concurrently used for
the second purpose. (10 R. C. L., tit. "Eminent Domain,"
sec. 129, and cases there cited.) We understand that the
industry of counsel has not enabled them to discover any case
where a taking of a street right of way, longitudinally cover-
ing a railroad right of way, was said to entitle the railroad
company to only nominal damages. Those cases which apply
such rule to street crossings, proceed upon the theory that the
right of way exists *ex necessitate,* and that the process of con-
demnation in such cases is merely formal. It is assumed in
such cases that in extending a railroad through a city, the
railroad company accepts the establishment of street crossings
as a common and necessary incident, on account of which it
is not to have compensation so long as its railroad is not sub-
jected to any other interference. "The railroad company
must be deemed to have laid its tracks within the corporate
limits of the city subject to the condition—not, it is true,

32 Cal. App.—36

expressed, but necessarily implied—that new streets of the city might be opened and extended from time to time across its tracks as the public convenience required, and under such restrictions as might be prescribed by statute." (*Chicago, B. & Q. Ry. Co.* v. *Chicago*, 166 U. S. 226, 250, [41 L. Ed. 979, 17 Sup. Ct. Rep. 581].) Though we might accept this principle as applied to ordinary street crossings of railroads, we do not consider it applicable to a lengthwise taking for street purposes, of a railroad right of way.

We concede that a public-service corporation is peculiarly subject to regulation under the police power, and that the action of the city authorities or of state authorities in compelling the defendant railroad company, at its own expense, to alter its railroad structures at any time when the continued maintenance of such structures endangers the public safety, will not be a taking of the property in the constitutional sense. But this furnishes no adequate reason why the city in condemning this right of way and applying it to street uses concurrently with the railroad use, should not pay for any diminution in value of the railroad company's reserved rights of use in the property, to the extent that such diminution in value can now be shown to be actually involved as a consequence resulting from the process of subjecting the land to street uses. That it is the purpose and policy of the state of California to allow this just compensation, is indicated by the language of section 1240 of the Code of Civil Procedure, to which we have referred, wherein it is provided that in subjecting property to such concurrent use the court may fix the terms and conditions upon which the property may be so taken. The fixing of those terms and conditions is evidently intended to include the allowance of compensation for the diminution in value to which we have referred.

The judgment and order are reversed.

James, J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 23, 1917.