[S. F. No. 11165. In Bank.—November 30, 1925.]

CITY OF OAKLAND (a Municipal Corporation), Respondent, v. MARY S. SCHENCK et al., Defendants; SOUTHERN PACIFIC COMPANY (a Corporation) et al., Appellants.

[1] EMINENT DOMAIN — CONDEMNATION OF RAILROAD RIGHT OF WAY FOR STREET PURPOSES—JOINT USER—JUDGMENT.—Where a city, by its complaint in condemnation against certain railroad companies, seeks only an "easement in, on and over" a certain strip of land used for a railroad right of way "for street purposes," and the findings fully cover the purposes of the action and the subject of joint user by the city and the railroad companies, and the judgment in condemnation declares that the use of the land "as and for a public street, is consistent with the continuance of the use of said property for the present use as and for a railroad right of way and that both public uses can exist together," the failure of the judgment to provide in terms, in accordance with a stipulation entered into during the trial, that the land is condemned for street purposes in common with the use thereof for railroad purposes, is not prejudicial to the defendants, although it would be better practice to carry such reservation of use into the judgment.

[2] ID.—SMALL INTEREST APPROPRIATED — COMPENSATION — CONSTITUTIONAL LAW.—A railroad company's right of way is so far private property as to be entitled to the protection of the constitution, so that it can only be taken under the power of eminent domain; and a condition precedent to the exercise of that power is that the statute conferring it make provision for reasonably compensating the owner; and even though the interest appropriated may be small, and the amount of compensation difficult of proper measurement, some award should be made, however small the amount may be.

[3] ID.—RIGHT TO CONSTRUCT STREET CROSSINGS OVER RAILROAD RIGHT OF WAY—MEASURE OF COMPENSATION.—One of the incidents of the public use to which a railroad company dedicates its property used as a right of way is the right of the public to construct street crossings wherever and whenever reasonably necessary; and, therefore, where a street is opened across a railroad right of way, the rule as to the amount of compensation to be allowed the railroad company is different from the rule which prevails in the case of the taking of the property of an individual for like uses.

2. See 10 Cal. Jur. 331; 22 Cal. Jur. 283; 10 R. C. L. 180.

[4] ID. — INTERFERENCE WITH RAILROAD COMPANY'S USE — NOMINAL COMPENSATION.—In condemning a right of way for a street across a railroad right of way, the inquiry must be directed to ascertaining the extent to which the value of the company's right to use the land for railroad tracks will be diminished by the opening of the street across it, and if the opening of the street across the railroad tracks does not unduly interfere with the company's use for legitimate railroad purposes, its compensation should be nominal.

[5] ID.—AMOUNT OF COMPENSATION—QUESTIONS OF FACT.—In condemning a right of way for a street across a railroad right of way, whether there is any interference with the company's use for legitimate railroad purposes, what is its extent, and what is the value of that lost by the company as the direct result of such interference, are questions of fact to be determined in the light of legal principles by which the court is to be governed in fixing the amount of compensation to owners of the railroad right of way.

[6] ID.—PRIOR CONSTRUCTION OF BUILDINGS—JUST COMPENSATION.—If, prior to the institution of such condemnation proceedings, the railroad company has constructed upon the land embraced within the crossing buildings to be used in its business, it is necessary, in ascertaining the just compensation to be awarded, to take into consideration the value of such improvements.

[7] ID.—CONDEMNATION OF EASEMENT—LIABILITY FOR FEE IN LAND— ISSUES—BURDEN OF PROOF.—Where the right to open a street across railroad tracks is all that a city seeks to obtain by proceedings in condemnation, it is not bound to acquire and pay for the fee in the land over which the street is opened; and the extent to which the value of the company's right to use the land for railroad tracks is unduly diminished by opening the public street across it is the only question to be determined, and the burden of showing such diminution of value of the right of way is upon the company.

[8] ID.—DUTY OF RAILROADS TO MAINTAIN CROSSINGS—COMPENSATION FOR STRUCTURAL CHANGES.—As a general rule, it is the duty of every railroad company to construct and maintain in good condition its crossings over highways, so far as the same can be done without interfering with the operation of the railway, whether those crossings are laid out after the construction of the railway or are in existence at the time of its construction; and, where a right of way for a street is condemned across a railroad right of

---

4.   See 10 Cal. Jur. 344.
5.   See 10 Cal. Jur. 367.
8.   See 22 Cal. Jur. 263; 22 R. C. L. 890.

way, the expenses that will be incurred by the railroad company in making structural changes, such as filling the portion of the tracks between the rails, and two feet outside, with planks, and other crossing changes, in order that the railroad may be safely operated, cannot be recovered by the railroad company as they must be deemed to have been taken into account by the railroad company when it accepted the privilege and franchise granted by the state.

(1) 20 **C. J.**, p. 1060, n. 60.   (2) 20 **C. J.**, p. 946, n. 94.   (3) 20 **C. J.**, p. 706, n. 42.   (4) 20 **C. J.**, p. 706, n. 42.   (5) 20 **C. J.**, p. 706, n. 42.   (6) 20 **C. J.**, p. 706, n. 42.   (7) 20 **C. J.**, p. 706, n. 40, p. 744, n. 22.   (8) 20 **C. J.**, p. 744, n. 23.

APPEAL from a judgment of the Superior Court of Alameda County. J. J. Trabucco, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. J. Foulds and H. W. Hobbs for Appellants.

Leon E. Gray, City Attorney of the City of Oakland, and Bestor Robinson, Deputy City Attorney, for Respondent.

Frank Karr, R. C. Gortner and C. W. Cornell, as *Amici Curiae* in Support of Appellants.

Jess E. Stephens, City Attorney of the City of Los Angeles, and Robert J. Stahl, Deputy City Attorney, as *Amici Curiae* in Support of Respondent.

WASTE, J.—This is an appeal from a judgment in condemnation. The defendant railroad companies were the owners in fee of a strip of land in the City of Oakland 115.272 feet in width and approximately 757 feet in length. The northeasterly 55.272 feet of this strip is in use as a right of way for appellants' electric suburban railroad, while the southwesterly 60 feet of the strip is not presently devoted to railroad uses. The city brought this action, under the Street Opening Act of 1903, to condemn a strip of land 60 feet wide across the lands of appellants and of defendant Schenck for the purpose of opening and extending 89th Avenue. The court, sitting without a jury, found the value of the part of appellants' land not devoted to rail-

road purposes to be $300, and that no damages would be suffered by reason of the severance. The appellants take no exception to this finding. With respect to the part of the land in use for a railroad right of way the court found the value of the interest to be taken was one dollar, and that no damages would be suffered by appellants by reason of the taking. It is by this finding, and by the portion of the judgment awarding the nominal sum of one dollar as compensation that appellants feel aggrieved, and for that reason they prosecute this appeal.

Appellants' contentions are that the trial court erred, first, in awarding only one dollar as the value of the easement taken by the city for street purposes across the strip of land owned in fee by the defendants, and used as a railroad right of way, and, second, in holding that the railroad companies were not entitled to damages for the structural changes required in their tracks and appliances resulting from the opening of the street. [1] A less important contention is that the judgment in condemnation should have provided in terms, in accordance with a stipulation entered into during the trial, that the land was condemned for street purposes in common with the use thereof for railroad purposes. It would have been better practice to have carried such a reservation of use into the judgment; but we do not see how the appellants have been prejudiced by what was done in this case. The plaintiff below, by the complaint in condemnation, sought only an "easement in, on and over said pieces or parcels of land for street purposes." The findings fully cover the purposes of the action and the subject of joint user by the city and the railroad companies. The judgment declares that the use of the property (parcel 2) "as and for a public street, is consistent with the continuance of the use of said property for the present use as and for a railroad right of way and that both public uses can exist together." When these proceedings were instituted the railroad companies had an exclusive right to use the land in question for tracks upon which to move their cars. The city does not propose to interfere in any degree with the enjoyment of that right otherwise than by the opening of the street across the tracks for a public use. The judgment carries no greater estate than a mere easement in the property for

the uses stated. (*McCarthy* v. *Southern Pac. Co.*, 148 Cal. 211, 222 [82 Pac. 615].)

In support of their contention that the trial court erred in allowing only one dollar for the taking of an easement for street purposes over the railroad, right of way, appellants argue, first, that the taking of a right of way for use as another right of way is the taking of land, or an interest in land, which shall not be taken or damaged for public use without just compensation made to the owner or paid into court for him. (Const., art. I, sec. 14.) **[2]** It may not be questioned that a railroad's right of way is so far private property as to be entitled to the protection of the constitution, so that it can only be taken under the power of eminent domain; and a condition precedent to the exercise of that power is that the statute conferring it make provision for reasonably compensating the owner. (*Western Union Tel. Co.* v. *Pennsylvania R. R. Co.*, 195 U. S. 540, 570 [1 Ann. Cas. 517, 49 L. Ed. 312, 25 Sup. Ct. Rep. 133, see also Rose's U. S. Notes].) The interest appropriated by the party condemning may be small, and the amount of compensation difficult of proper measurement, but some award should be made, however small the amount may be. (*Lake Erie & W. R. Co.* v. *Commissioners*, 63 Ohio St. 23 [57 N. E. 1009].) **[3]** But, because of the nature of the interest in the land which is acquired by a city, where a street is opened across a railroad right of way, the rule as to the amount of compensation to be allowed the railroad company is different from the rule which prevails in the case of the taking of the property of an individual for like uses. The reason for this difference is that one of the incidents of the public use to which a railroad company dedicates its property used as a right of way is the right of the public to construct street crossings wherever and whenever reasonably necessary. **[4]** In condemning a right of way for a street across a railroad right of way, the inquiry must be directed to ascertaining the extent to which the value of the company's right to use the land for railroad tracks will be diminished by the opening of the street across it. If the opening of the street across the railroad tracks in this case does not unduly interfere with the companies' use for legitimate railroad purposes, then their compensation should be nominal. **[5]** Whether

there was such an interference, what was its extent, and what was the value of that lost by the appellants as the direct result of such interference, were questions of fact to be determined in the light of the legal principles by which the court was to be governed in fixing the amount of compensation to the owners of the railroad right of way. (*Chicago, B. & Q. R. R.* v. *Chicago,* 166 U. S. 226, 242 [41 L. Ed. 979, 17 Sup. Ct. Rep. 581, see, also, Rose's U. S. Notes].) [6] If, prior to the institution of the condemnation proceedings, the railroad companies had constructed upon the land embraced within the crossing buildings to be used in their business, it would have been necessary, in ascertaining the just compensaion to be awarded, to take into consideration the value of such improvements. There were no buildings in the present case. The inquiry is directed solely to the question of the diminution, if any, in value of the railroad right of way.

The legislature has declared what estates and rights in land may be taken in this state for public use. Section 1239 of the Code of Civil Procedure, after designating (subd. 1) the cases in which a fee simple may be taken, prescribes (subd. 2) that, with certain exceptions, only an easement may be taken. One of the exceptions is that "when the taking is by a municipal corporation, and is for the purpose of constructing, equipping, using, maintaining any . . . road . . . a fee simple may be taken if the legislative body of such municipal corporation shall, by resolution, determine the taking thereof to be necessary." In this case only an easement is sought. Section 2631 of the Political Code declares that, by taking land for a highway, the public acquires only the right of way, and the incidents necessary to enjoying and maintaining the same, subject to the regulations in the codes provided. In the present case it was stipulated that the portion of the right of way of the appellants sought to be condemned was required for street purposes only, for use by the public in common with the use by the railroad companies; that the uses are consistent; and that the railroad operated by the defendants can exist with the street across it. Appellants, as owners of the fee in the right of way over which the street is opened, will retain their rights in the soil for all purposes which are consistent with the full enjoyment of the ease-

ment for street purposes acquired by the city. (*Wright* v. *Austin*, 143 Cal. 236, 239 [101 Am. St. Rep. 97, 65 L. R. A. 949, 76 Pac. 1023]; *Gurnsey* v. *Northern California Power Co.*, 160 Cal. 699, 705 [36 L. R. A. (N. S.) 185, 117 Pac. 906].) [7] As the right to open a street across the railroad tracks was all that the city sought to obtain by the proceedings in condemnation, it was not bound to acquire and pay for the fee in the land over which the street is opened. The extent to which the value of the companies' right to use the land for railroad tracks was unduly diminished by opening the public street across it was the only question to be determined by the jury. (*Chicago, B. & Q. R. R.* v. *Chicago,* 166 U. S. 226, 251 [41 L. Ed. 979, 17 Sup. Ct. Rep. 581, see, also, Rose's U. S. Notes].) The burden of showing such diminution of value of the right of way was on the appellants. The evidence, on the whole, on that subject is not as satisfactory as it might be. Its weight and the inferences to be drawn therefrom were matters confided to the discretion of the trial judge, and we are not disposed to hold that it fails to support the findings and judgment of the court below.

[8] Appellants' second major contention is that the trial court erred in holding that the railroad companies were not entitled to damages for structural changes required in their tracks and appliances, resulting from the opening of the street. The contention presents a question which, like the first discussed, is no longer open to argument. Appellants cannot recover for such costs. The expenses that will be incurred by the railroad companies in making structural changes, such as filling the portion of the tracks between the rails, and two feet outside, with planks, and other crossing changes, in order that the railroad may be safely operated, necessarily result from the maintenance of a public highway, under legislative sanction, and must be deemed to have been taken into account by the railroad companies when they accepted the privileges and franchises granted by the state. Such expenses must be regarded as incidental to the police power of the state. "What was obtained, and all that was obtained, by the condemnation proceedings for the public was the right to open a street across land within the crossing that was used, and was always likely to be used, for railroad tracks. While the city was bound to

make compensation for that which was actually taken, it cannot be required to compensate the defendant for obeying lawful regulations enacted for the safety of the lives and property of the people.'' (*Chicago, B. & Q. R. R.* v. *Chicago, supra,* p. 255; see, also, *Cincinnati, I. & W. Ry.* v. *Connersville,* 218 U. S. 336, 343 [20 Ann. Cas. 1206, 54 L. Ed. 1060, 31 Sup. Ct. Rep. 93, see, also, Rose's U. S. Notes]; *Chicago, M. & St. P. Ry. Co.* v. *Minneapolis,* 232 U. S. 430, 438 [58 L. Ed. 671, 34 Sup. Ct. Rep. 400].) The acquisition by eminent domain of an easement for street purposes by a municipality is one thing. The power of the public to require, by subsequent proceedings, that its highways be made safe is another. As a general rule it is the duty of every railroad company to construct and maintain in good condition its crossings over highways, so far as the same can be done without interfering with the operation of the railway. The weight of authority is to the effect that the rule applies to crossings laid out after the construction of the railway as well as to those in existence at the time of its construction. (Elliott on Railroads, 3d ed., sec. 1570; 2d ed., sec. 1102.) Appellants admit that no change or relocation of their tracks or any other structural changes will become necessary, nor, so far as can now be seen, will there be any difference whatever with respect to physical conditions at the point where 89th Avenue crosses the railroad right of way until the street is actually opened and in use. When that time shall arrive the question of structural changes and the improvement of the highway will become an issue. The duty resting on the railroad companies to make the necessary changes and improvements does not arise because of the opening of the street, but because of the obligation imposed through the exercise by the city of the power to order the crossing improved whenever it becomes necessary for the protection of life and property.

We are aware that there has not been a uniformity of opinion in the decisions of the courts of the other states on the questions presented by this appeal. The conflicts appear, however, to be more shadowy than real, when it becomes apparent that they are mainly due to differences in the statutes of the various states. We are not disposed to be led into a critical analysis of the many decisions cited by opposing counsel, but, as the decision of the supreme

court of the United States in *Chicago, B. & Q. R. R.* v. *Chicago, supra,* determines so much of the controversy presented by this appeal, and as the question is one of first impression in this state, we feel it were well to refer to that case somewhat at length. The city of Chicago sought to open and widen a street by condemning certain parcels of land owned by individuals, and also certain parts of the right of way of the Chicago, Burlington & Quincy Railroad Company. In their verdict the jury fixed one dollar as just compensation to the railroad company in respect to those parts of its right of way to be used for the purposes of the proposed street. On appeal the railroad company claimed that it was entitled, by reason of the opening of the street, to recover as compensation a sum equal to the difference between the value of the fee of the land sought to be crossed, without any restrictions on its right to use the land for any lawful purpose, and the value of the land burdened with a perpetual right in the public to use it for the purpose of a street, subject to the right of the railroad company to use it only for railroad tracks or any purpose for which it could be used without interfering with its use by the public. The supreme court of Illinois held (149 Ill. 457 [37 N. E. 78]), that when the city, under the authority of law, extended the street across the railroad tracks or right of way, it did not prevent their use by the railroad company, and that the measure of compensation should be the amount of decrease in the value for railroad purposes caused by the use for purposes of a street, such use being exercised jointly with the use by the company. In other words, it held that the company should be compensated merely for the diminution in its right to use its tracks caused by the existence and use of the street. The judgment of the lower court was affirmed. On writ of error to the supreme court of the United States the decision of the Illinois supreme court was held to be "a correct interpretation of the local statute, and as indicating not only the interest acquired by the public through proceedings instituted for the extension of a street across the tracks and right of way of the railroad company, but also the extent to which the company was deprived, by the proceedings for condemnation, of any right in respect of the land. Such being the law of the state, it would necessarily follow that

the jury, in ascertaining the amount of compensation, could not properly take as a basis of calculation the market value of the land as land. The land as such was not taken, the railroad company was not prevented from using it, and its use for all the purposes for which it was held by the railroad company was interfered with only so far as its *exclusive* enjoyment for purposes of railroad tracks was diminished in value by subjecting the land within the crossing to public use as a street.''

Another contention advanced by the plaintiff in error in the Chicago case was that, in arriving at the amount of damages, the trial court failed to take into consideration the fact that a railroad easement is not necessarily in perpetuity, and that in the event of the abandonment of its line the company would find itself deprived of its property without any compensation having been paid therefor. The United States supreme court held (p. 249) that the jury could not properly have taken into consideration the possibility that at some future time the company would put itself in the situation where, if no street crossed its right of way, it might sell its land for what it was worth as land freed from any public easement, for the reason that ''such a possibility was too remote and contingent to have been taken into account.'' Another contention of the railroad company was that the land sought to be condemned was subject to sale by the railroad company for any lawful use; that, after being condemned for purposes of a public street, it could not be sold, as land held for private use could be sold in the market; consequently, its salable value, treating it as land simply, was practically destroyed by the opening of a public street across it. In answer, the court said (pp. 250, 251) that the railroad company must be deemed to have laid its tracks within the limits of the city subject to the condition, necessarily implied, that new streets might be opened and extended from time to time across its tracks as the public convenience required, and under such restrictions as might be prescribed by statute. The city did not propose to interfere in any degree with the enjoyment of the right of the company to use the land in question for tracks upon which to move its cars, otherwise than by opening a street across the tracks for public use. Consequently, it was not bound to obtain and pay for the land

over which the street was opened, the only question of compensation to be determined being to what extent the use of the land for railroad tracks was unduly diminished by opening a public street across it.

Appellants admit that if the decision of the United States supreme court in *Chicago, B. & Q. R. R.* v. *Chicago, supra,* is applicable under the statutes and constitution of this state, it sustains the contention of the City of Oakland, and supports the judgment of the lower court. They contend, however, that the decision should be restricted in its effect to being merely an affirmance of the interpretation given the laws of Illinois by the supreme court of that state. In Illinois, a railroad company can acquire land, whether by voluntary purchase or otherwise, for railroad purposes as defined in its charter. It does not hold land, as does the ordinary owner, with the right of using it for any purpose to which it may be adapted. (149 Ill. 457, 461.) In this state there is no such restriction on the right of a railroad company. It may acquire the fee in land by direct purchase, although it may obtain only an easement for railroad purposes if it resort to proceedings in eminent domain. (Code Civ. Proc., sec. 1238; *Southern Pac. R. R. Co.* v. *San Francisco Sav. Union,* 146 Cal. 290, 292 [106 Am. St. Rep. 36, 2 Ann. Cas. 962, 70 L. R. A. 221, 79 Pac. 961].) But, whatever may be the nature of the interest of the railroad company in the land, in this state, the nature of the easement acquired by a municipality, in condemning a right of way for street purposes across the railroad tracks, as in the present case, is the same as in the state of Illinois. An easement only is taken in each case. Consequently, we find no difficulty in applying the reasoning of the Chicago case to the situation presented here. Other courts have gone exhaustively into the subject and have reached the same conclusion. A most interesting discussion of the issues presented by this appeal and the cases bearing on the questions will be found in two notes to *Grafton* v. *St. Paul etc. Ry. Co.,* 16 N. D. 313 [113 N. W. 598], 15 Ann. Cas. 10–13, and in 22 L. R. A. (N. S.) 1–15.

Appellants cite two decisions of the courts of this state which, they argue, lay down a rule of compensation differing from that we have followed in the present case: *City of Los Angeles* v. *Zeller,* 176 Cal. 194 [167 Pac. 849]; *Los*

*Angeles* v. *Allen,* 32 Cal. App. 553 [163 Pac. 697]. In each of these cases, however, the court was careful to point out the well-recognized distinction between the absolute taking of a long longitudinal strip of land used as a right of way by a railroad, and the situation presented by the opening of new streets, from time to time, across the tracks of the railroad company, as the public convenience requires, and under such restrictions as may be prescribed by statute. "The right to take longitudinally is very different from the mere right to cross, for in the one case the rights of the railway company are materially impaired, while in the other the taking is such that both uses can stand together." (Elliott on Railroads, 3d ed., sec. 1566; 2d ed., sec. 1098.)

The judgment of the lower court is affirmed.

Shenk, J., Lawlor, J., Seawell, J., Richards, J., and Myers, C. J., concurred.

Rehearing denied.