[No. H033503. Sixth Dist. May 20, 2010.]

CITY OF SAN JOSE, Plaintiff and Appellant, v.
UNION PACIFIC RAILROAD COMPANY, Defendant and Appellant.

**COUNSEL**

Richard Doyle, City Attorney, George Rios, Assistant City Attorney, Robert Fabela and Brian C. Hopper, Deputy City Attorneys, for Plaintiff and Appellant.

Berliner Cohen, Thomas P. Murphy, Andrew L. Faber and Laura Palazzolo for Defendant and Appellant.

**OPINION**

**PREMO, Acting P. J.**—Plaintiff City of San Jose (City) sued defendant Union Pacific Railroad Company (Union Pacific) to condemn roadway easements over railroad tracks so as to widen a road already traversing the tracks. The parties agreed on the taking and litigated the compensation issue in a court trial based on stipulated facts. The trial court awarded Union Pacific nominal compensation for the taking insofar as the easements traversed the property within the track corridor. And it awarded fair-market-value compensation for the taking insofar as the easements traversed the property outside the track corridor. Union Pacific appeals from the judgment and contends that it was entitled to fair-market-value compensation for the taking within the track corridor. City appeals from the judgment and contends

that Union Pacific was entitled to only nominal compensation for the taking outside the track corridor. At the heart of the dispute is whether *City of Oakland v. Schenck* (1925) 197 Cal. 456 [241 P. 545] (*Schenck*), is controlling authority. We conclude that it is. We therefore affirm the judgment.

## BACKGROUND

We appreciate the trial court's concise statement of decision and adopt it as indicated.

"City seeks to condemn roadway easements (the 'Roadway Easements') over portions of five parcels of land owned by [Union Pacific] for the purpose of widening Oakland Road. Two separate strips of property owned by [Union Pacific] are crossed by the road (these strips are referred to as 'rights of way' or transportation corridors herein for convenience, and not to indicate some legal significance from the use of those terms). One right of way is crossed by Oakland Road near a street called Faulstich Court, and thus is referred to as 'the Faulstich Court Crossing.' There are three small parcels of land at this crossing, which were referred to in the Stipulation as Parcel A (36.5 square feet on the westerly side of Oakland Road), Parcel B (644 square feet on the westerly side of Oakland Road), and Parcel C (511 square feet on the easterly side of Oakland Road). The second crossing is near a street called Wayne Avenue and is thus referred to as 'the Wayne Avenue Crossing.' This take involves Parcel D (658 square feet on the westerly side of Oakland Road) and Parcel E (6,067 square feet on the easterly side of Oakland Road). Parcels A, B, C, D, and E are collectively referred to herein as the 'Properties.'

"According to the Stipulation, for purposes of this trial, the parties agreed that the City's widening of Oakland Road as set forth in the Complaint will not interfere with [Union Pacific's] railroad operations or continued use for railroad track placement and train passage of the area within its transportation corridors covering a width of 10 feet in either direction from the center line of the single existing track (a total width of 20 feet). This 20-foot swath of land for track placement and train passage will herein be referred to as the 'Necessary Track Clearance Width.'

"The parties further stipulated that [Union Pacific] has the right to make use of all land within its transportation corridors that is not within the Necessary Track Clearance Width for alternative transportation corridor purposes, including, but not limited to, storage, development, leasing or licensing to third parties, addition of switches, signal cases, trackside detection equipment, side tracks for rail car storage, and storage for ties, ballast, crossing panels and other railroad materials."

The parties also agreed on the amount of square footage each parcel had within and outside the "Necessary Track Clearance Width." They further agreed on the fair market value for each parcel based on a value per square foot. And they finally agreed that nominal compensation was $2,500 for the Faulstich Court crossing and $2,500 for the Wayne Avenue crossing.

The trial court found that *Schenck* applied to the portion of the properties within the Necessary Track Clearance Width and awarded Union Pacific the $5,000 nominal compensation therefor. It found that *Schenck* did not apply to the portion of the properties outside of the Necessary Track Clearance Width and, based on the stipulated value per square foot, awarded Union Pacific $174,389 fair-market-value compensation therefor.

Union Pacific contends that *Schenck* does not apply to the portion of the properties within the Necessary Track Clearance Width. It concludes that it is entitled to an additional $87,462. City contends that *Schenck* applies to all portions of the properties. It concludes that Union Pacific is limited to compensation of $5,000.

## *SCHENCK*

In *Schenck*, the defendants owned a strip of land in fee approximately 115 feet in width and 757 feet in length. They used the northeasterly 55 feet of the strip as a right-of-way for their railroad. They did not use the southwesterly 60 feet of the strip for railroad uses. The city brought a condemnation action under the Street Opening Act of 1903 to condemn a strip of land 60 feet wide across the defendants' strip for the purpose of opening and extending 89th Avenue. The trial court found that no damages would be suffered by the defendants by the taking of the portion of the land used for a railroad right-of-way. It explained that the use of the property as and for a public street was consistent with the continuance of the use of the property as and for a railroad right-of-way and that both public uses can exist together. It therefore awarded $1 for the taking. As to the taking of the portion of the land not devoted to railroad purposes, the trial court awarded $300. On appeal, the defendants challenged the $1 award. The Supreme Court affirmed the judgment.

The court acknowledged the principle that a railroad's right-of-way is private property such that it can only be constitutionally taken under the power of eminent domain, which requires reasonable compensation to the owner. "The interest appropriated by the party condemning may be small, and the amount of compensation difficult of proper measurement, but some award should be made, however small the amount may be." (*Schenck, supra*, 197 Cal. at p. 460.)

The court noted the following: "In the present case it was stipulated that the portion of the right of way of the appellants sought to be condemned was required for street purposes only, for use by the public in common with the use by the railroad companies; that the uses are consistent; and that the railroad operated by the defendants can exist with the street across it. Appellants, as owners of the fee in the right of way over which the street is opened, will retain their rights in the soil for all purposes which are consistent with the full enjoyment of the easement for street purposes acquired by the city." (*Schenck, supra,* 197 Cal. at pp. 461–462.)

■ The court explained as follows: "*But, because of the nature of the interest in the land which is acquired by a city, where a street is opened across a railroad right of way, the rule as to the amount of compensation to be allowed the railroad company is different from the rule which prevails in the case of the taking of the property of an individual for like uses. The reason for this difference is that one of the incidents of the public use to which a railroad company dedicates its property used as a right of way is the right of the public to construct street crossings wherever and whenever reasonably necessary. In condemning a right of way for a street across a railroad right of way, the inquiry must be directed to ascertaining the extent to which the value of the company's right to use the land for railroad tracks will be diminished by the opening of the street across it. If the opening of the street across the railroad tracks in this case does not unduly interfere with the companies' use for legitimate railroad purposes, then their compensation should be nominal.* Whether there was such an interference, what was its extent, and what was the value of that lost by the appellants as the direct result of such interference, were questions of fact to be determined in the light of the legal principles by which the court was to be governed in fixing the amount of compensation to the owners of the railroad right of way. [Citations.] If, prior to the institution of the condemnation proceedings, the railroad companies had constructed upon the land embraced within the crossing buildings to be used in their business, it would have been necessary, in ascertaining the just compensaion [*sic*] to be awarded, to take into consideration the value of such improvements. There were no buildings in the present case. The inquiry is directed solely to the question of the diminution, if any, in value of the railroad right of way." (*Schenck, supra,* 197 Cal. at pp. 460–461, italics added.)

The court concluded as follows: "As the right to open a street across the railroad tracks was all that the city sought to obtain by the proceedings in condemnation, it was not bound to acquire and pay for the fee in the land over which the street is opened. The extent to which the value of the companies' right to use the land for railroad tracks was unduly diminished by opening the public street across it was the only question to be determined by the jury. [Citations.] The burden of showing such diminution of value of the

right of way was on the appellants. The evidence, on the whole, on that subject is not as satisfactory as it might be. Its weight and the inferences to be drawn therefrom were matters confided to the discretion of the trial judge, and we are not disposed to hold that it fails to support the findings and judgment of the court below." (*Schenck, supra,* 197 Cal. at p. 462.)

The court finally distinguished the authorities relied on by the defendants: "Appellants cite two decisions of the courts of this state which, they argue, lay down a rule of compensation differing from that we have followed in the present case: *City of Los Angeles* v. *Zeller* [(1917)] 176 Cal. 194 [167 Pac. 849]; *Los Angeles* v. *Allen* [(1917)] 32 Cal.App. 553 [163 Pac. 697]. In each of these cases, however, the court was careful to point out the well-recognized distinction between the absolute taking of a long longitudinal strip of land used as a right of way by a railroad, and the situation presented by the opening of new streets, from time to time, across the tracks of the railroad company, as the public convenience requires, and under such restrictions as may be prescribed by statute. 'The right to take longitudinally is very different from the mere right to cross, for in the one case the rights of the railway company are materially impaired, while in the other the taking is such that both uses can stand together.' " (*Schenck, supra,* 197 Cal. at pp. 466–467.)

## DISCUSSION

■ Insofar as Union Pacific's appeal is concerned, the parties implicitly concede that the facts of *Schenck* are indistinguishable from the facts of this case and they agree that *Schenck* has never been overruled. We are required to follow controlling decisions of the Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Union Pacific nevertheless argues: "The trial court erred in relying on *Schenck* to support an award of nominal compensation for the taking of the property within the Necessary Track Clearance Width. The statutory scheme under which *Schenck* was decided is no longer in existence, and *Schenck* is inconsistent with the current Eminent Domain Law."

According to Union Pacific, "the basis of decision in *Schenck*" was the Street Opening Act of 1903 and that act has been superseded by the 1975 Eminent Domain Law codified at Code of Civil Procedure section 1230.010 et seq., which now covers all aspects of condemnation law and procedure. Union Pacific concludes that "Nothing in the Eminent Domain Law provides for the payment of nominal value for the taking of property owned by a railroad."

Union Pacific, however, fails to point out where the Street Opening Act of 1903 provided for the payment of nominal value for the taking of property owned by a railroad. We therefore accept that both acts are silent on the issue. From this, we glean that the basis of decision in *Schenck* was the constitutional concept of reasonable compensation rather than the condemnation statute then in effect. And that basis was in fact the appellants' argument in the case: "[A]ppellants argue, first, that the taking of a right of way for use as another right of way is the taking of land, or an interest in land, which shall not be taken or damaged for public use without just compensation made to the owner or paid into court for him. (Const., art. I, sec. 14.)" (*Schenck, supra,* 197 Cal. at p. 460.)[1]

Union Pacific additionally urges that the Eminent Domain Law now provides that the measure of just compensation is the fair market value of the property taken. (Code Civ. Proc., § 1263.310.) According to Union Pacific, this measure requires that "property is to be valued at its highest and best use" and redefines prior law, which included a valuation concept of "in the open market" that allowed special use properties to be undervalued because a relevant market did not exist. Union Pacific also cites Code of Civil Procedure section 1263.330, which provides that fair market value shall not include any increase or decrease in the value of the property that is attributable to the project for which the property is taken. According to Union Pacific, the trial court attributed a decrease in the value of the property (from fair market value to nominal value) because of the type of project for which the property was taken (a railroad crossing).

But, again, *Schenck* did not ground itself on a statutory valuation concept that has now been superseded. It rested on the constitutional concept of reasonable compensation as applied to the unique circumstances presented when a public road must cross railroad tracks: (1) the railroad's land is not taken as such; (2) the railroad's use of the land is not prevented; and (3) the land's value is diminished only to the extent that the railroad's exclusive use becomes shared with a public use. (See *Schenck, supra,* 197 Cal. at p. 465, discussing *Chicago, Burlington &c. R'd v. Chicago* (1897) 166 U.S. 226 [41 L.Ed. 979, 17 S.Ct. 581].) *Schenck* made this point in the language we emphasized earlier by explaining that the rule as to the amount of compensation to be allowed a railroad company for a public crossing is different from the ordinary rule because one of the incidents of the public use to which a railroad company dedicates its property used as a right-of-way is the right of

---

[1] The appellants' second argument was unrelated to the reasonable compensation argument. It pertained to anticipated future expenses: "Appellants' second major contention is that the trial court erred in holding that the railroad companies were not entitled to damages for structural changes required in their tracks and appliances, resulting from the opening of the street." (*Schenck, supra,* 197 Cal. at p. 462.)

the public to construct street crossings wherever and whenever reasonably necessary. Thus, in condemning an easement for a street across a railroad right-of-way, the inquiry must be directed to ascertaining the extent to which the value of the company's right to use the land for railroad tracks will be diminished by the opening of the street across it.

Union Pacific makes the point that it owns its property in fee and did not dedicate any of the property to the public for street crossings. But the point is without force. The defendants in *Schenck* also owned the property in fee. And the context of the comment about a railroad company dedicating its property subject to a public right-of-way for reasonable street crossings indicates that the court was simply speaking about the truism that railroad tracks are implicitly subject to condemnation for reasonable public street crossings. (See *Schenck, supra,* 197 Cal. at p. 465 ["the railroad company must be deemed to have laid its tracks within the limits of the city subject to the condition, necessarily implied, that new streets might be opened and extended from time to time across its tracks as the public convenience required . . ."].)

Union Pacific next claims that *Schenck* leads to absurd results because it would have been entitled to fair-market-value compensation had it removed its tracks one day before City condemned the property. This point is also without merit. Union Pacific could have removed its tracks before condemnation had it desired. But it did not. It therefore presented the existing facts to the trial court for resolution. The anomaly, if it be such, is not due to *Schenck* but to the unique circumstances presented when a public road must cross railroad tracks. That Union Pacific could remove its tracks in the future is of no moment. "The United States supreme court held [citation] that the jury could not properly have taken into consideration the possibility that at some future time the company would put itself in the situation where, if no street crossed its right of way, it might sell its land for what it was worth as land freed from any public easement, for the reason that 'such a possibility was too remote and contingent to have been taken into account.' " (*Schenck, supra,* 197 Cal. at p. 465, quoting *Chicago, Burlington &c. R'd v. Chicago, supra,* 166 U.S. 226.)

■ Union Pacific suggests that "much of the reason that the railroad was not compensated for the portion of its right of way containing tracks was that, on the particular facts of *Schenck,* the railroad did not meet its burden of proof under the 1903 Act." According to Union Pacific, the result in *Schenck* would be different today because, under the Eminent Domain Law, neither party has the burden of proof on the issue of compensation. (See Code Civ. Proc., § 1260.210, subd. (b).) But Union Pacific fails to explain how the result in *Schenck* would be different today. In any event, Union Pacific's point is illogical. The defendants in *Schenck* failed to prove that the railroad

crossing diminished the value of the land on which the tracks lay more than nominally. Had they today failed to prove the same, they would achieve the same result given that a claim of more than nominal diminishment necessarily fails without evidence to support it. The new burden-of-proof statute has nothing to do with this concept. In this case, Union Pacific simply failed to prove that City's railroad crossing diminished the value of the land on which the tracks lay more than nominally.

Union Pacific next asserts that *Schenck* is inconsistent with modern takings cases that recognize property ownership as encompassing a bundle of rights. According to Union Pacific, "A rule allowing a railroad only nominal compensation for the taking of its property, even the taking of an easement over property currently used only for railroad purposes, would impermissibly discount the value of the railroad's essential right to exclude others from the property." Union Pacific cites Supreme Court authority for the proposition that older constitutional interpretations should not be followed when modern ones have been promulgated. But we are not authorized to suppose that *Schenck* has been overruled by implication. (*Auto Equity Sales, Inc. v. Superior Court, supra*, 57 Cal.2d at p. 455.)

Union Pacific finally claims that City cannot take advantage of the *Schenck* rule because it never dedicated its property to public use. According to Union Pacific, the only justification for *Schenck's* different compensation rule for railroad crossings was the notion that the railroad's property was subject to a public-use dedication. Union Pacific reasons that a condemning agency must bring an action against property subject to a public-use dedication under Code of Civil Procedure section 1240.510, which contains "specific statutory provisions under which a condemning agency could condemn property already in public use." From this, it points out that City pleaded under the general eminent domain provisions pertaining to private property rather than section 1240.510. Union Pacific reasons that City properly did so because City could not plead that it had dedicated its railroad property for public use. Since this is not a public-use-dedication case, Union Pacific concludes that the case is outside the *Schenck* rule. But, as we have pointed out, *Schenck* does not state that it applies in the context of a taking of property already formally dedicated to the public. *Schenck* simply mentioned the concept that railroad tracks are implicitly subject to condemnation for reasonable public street crossings.

Insofar as City's appeal is concerned, City contends that, "by its very terms, the *Schenck* decision was intended to apply to the entire right of way, as opposed to just the narrow strip of land where tracks lie." In a related argument, City advances that the nominal damages rule applies to the entire "right of way" because railroad companies are deemed to have dedicated their "rights of way" for reasonable street crossings.

City relies on *Schenck*'s use of the term, "right of way," but is unclear thereafter. It seems to distinguish "right of way" from the defendants' land undevoted to railroad purposes for which the *Schenck* defendants received market-value compensation. From there, it appears to claim that *Schenck* defines "right of way" to mean land devoted to railroad purposes. It then seems to imply that the corridors outside the Necessary Track Clearance Width in this case were used for railroad purposes. From there, it apparently concludes that the "right of way" in this case includes more than the Necessary Track Clearance Width. We disagree with City.

First, it is crystal clear that the court in *Schenck* did not define the term "right of way." And it is also clear that the court was using the term in the layman's sense—a supposition that existing railroad tracks have a right-of-way. This follows because the defendants did not own an easement to run tracks over someone else's property but owned property outright over which to run its tracks (as Union Pacific does in this case). There simply was no "right of way," i.e., easement, in *Schenck*. City's premise therefore fails.

Second, the facts of *Schenck* do not support City's theory. We have recounted the facts. Though they are not entirely clear from the case, on closer examination, they can be inferred, clarified, and simplified as follows.

The defendants owned a 115-foot (north-south) by 757-foot (east-west) parcel of land. The railroad "right of way" was the northern horizontal 55-foot by 757-foot strip, and the land not devoted to railroad purposes was the southern horizontal 60-foot by 757-foot strip. The city sought to condemn a vertical 115-foot (north-south) by 60-foot (east-west) strip for a 60-foot-wide road that would traverse north-south for 115 feet, crossing the railroad tracks. The trial court in *Schenck* divided the vertical 115-foot by 60-foot strip into two: the northern 55-foot by 60-foot right-of-way and the southern 60-foot by 60-foot undevoted remainder. It awarded nominal compensation for the right-of-way and fair market value for the undevoted remainder.

Thus, the defendants in *Schenck* received fair-market-value compensation for the land that approached the railroad tracks and nominal compensation for the land that crossed the railroad tracks. This, in essence, is how the trial court parceled compensation in this case. Though we agree that *Schenck* does not require such parceling as a matter of law (the parceling was not in issue), the case certainly supports the notion that a trier of fact could rationally parcel in a like manner. To take an extreme example, if one supposes that a railroad company owns a 10-acre pasture through which it runs its tracks, a taking to build a road crossing the tracks takes much more value than a nominal diminishment of "the company's right to use the land for railroad tracks." (*Schenck, supra*, 197 Cal. at p. 460.) Here, the parties' stipulation

parceled Union Pacific's property. City was free to argue that, despite the parceling, the entire taking amounted to no more than a nominal diminishment of Union Pacific's right to use the land for railroad tracks.

## DISPOSITION

The judgment is affirmed.

Elia, J., and McAdams, J., concurred.

A petition for a rehearing was denied June 11, 2010, and the petition of appellant Union Pacific Railroad Company for review by the Supreme Court was denied September 1, 2010, S184653.